[Civ. No. 7819. First Appellate District, Division One.—September 27, 1932.]

HARRY C. SCHROEDER, Appellant, v. MAUDE AGNES MINGUS WHEELER, Respondent.

John H. Miller, A. W. Boyken and N. D. Thomas for Appellant.

Norman J. Ronald, Walter M. Gleason and George W. Hickman for Respondent.

Philbrick McCoy and A. G. Bailey, as *Amici Curiae* on Behalf of Respondent.

LANDIS, J., *pro tem.*—The following are the facts as stated in appellant's brief and appear to substantially cover the controlling facts, to wit:

The defendant, Maude Agnes Mingus Wheeler, was the inventor and manufacturer of a composition hair rinse known as Lavalon Rinsing Powder. Desiring to obtain protection for her invention and for the name "Lavalon", she filed in the United States patent office two applications, one for a patent on the hair rinse and the other for a trademark on the aforesaid name, which trademark later became involved in an opposition proceeding. Both of these applications were filed through the plaintiff, Harry C. Schroeder, a registered patent attorney who has been engaged in that profession in Oakland, California, approximately twenty years. During all of the time Schroeder had dealings with defendant, he had associated with him, as an employee, Adelbert Schapp, an attorney at law, admitted to practice in all the courts of California, who was a registered patent attorney as well.

It became necessary for defendant to file additional applications in the patent office to protect her interests adequately and to enable her to take legal proceedings if her rights should be invaded by infringers. She was not financially able to compensate Schroeder for his services as a patent attorney. A contract was therefore made in writing between plaintiff and defendant, by the terms of which plaintiff agreed to file and prosecute all patent and trademark applications for defendant and protect defendant against infringement and unfair competition "by employing counsel when necessary". In consideration of these covenants the defendant agreed to compensate plaintiff in an amount equal to five per cent of the gross income from her "Lavalon" business. This contract was entered into on May 21, 1926, and was to continue in force for a period of ten years.

On August 5, 1927, the defendant ceased to make payments under the contract and on October 10, 1927, wrote a letter to plaintiff purporting to terminate and cancel the same. Thereupon plaintiff filed his complaint, alleging that he was ready, competent, willing and able to perform the services required of him under the contract; that defendant had failed and refused to pay him the compensation reserved in the agreement, except the sum of $555.28; and in an amended complaint alleged that there was due him a sum in excess of $2,500. He prayed for an adjudication of the rights of the parties under the contract and for an accounting.

In the answer, defendant, after a denial of paragraphs IV and V of the complaint, set up as a separate defense that the contract called for the services of an attorney at law, and that performance on his part was, therefore, impossible. As a further separate defense the answer alleged default on the part of plaintiff in protecting defendant against the infringement of S. Hikell and Company of Omaha, Nebraska, thereby giving defendant the right to terminate the contract.

Upon the original trial of the action the court directed findings in favor of the plaintiff, subsequently reopened the case for further trial, and after the further trial of the case made its findings and caused judgment to be entered for defendant, and this appeal is by plaintiff from said judgment.

Appellant contends that the following six findings are contrary to the evidence, and that they thus constitute the issues of this appeal, to wit: The finding "that under and by virtue of the terms and promises of said written contract, plaintiff also promised and agreed to and in fact did perform certain services of an attorney-at-law"; the finding "that at the time of entering into said contract defendant did not know that plaintiff was not an attorney-at-law"; the finding "that it is not true that plaintiff has at all times or at any time, or at all, been ready and/or competent and/or willing and/or able to perform each and/or every, and/or all and/or singular the services and/or any part or portion of the services specified and/or required of him under the terms of the said agreement and that it is not true that plaintiff has performed all and/or any ser-

vices thereunder required and/or requested by defendant'';
the finding ''that plaintiff failed, refused and neglected to
perform for defendant any of the services so agreed by
him to be performed except that plaintiff did procure for
defendant not to exceed six patents, and in this respect the
court finds that defendant paid to plaintiff therefor the
sum of Five Hundred and Fifty-five and 28/100 ($555.28)
Dollars, and that plaintiff has been fully compensated
therefor''; the finding ''that it is not true there is now
and/or that there was at any time, or at all, due to plain-
tiff from defendant, a sum in excess of Twenty-five Hundred
Dollars, or any sum or sums whatever''; the finding ''that
defendant performed each and every all and singular the
promises, covenants and agreements in said contract by
her agreed to be performed''.

For the purpose of simplifying the discussion, appellant
groups said findings into the following questions: 1. Did
plaintiff agree to perform and did he in fact perform the
services of an attorney at law? 2. Did defendant know
plaintiff was not an attorney at law? 3. Did plaintiff or
defendant violate the terms of the contract? 4. Was plain-
tiff fully compensated for the services performed by him
under the contract?

Defendant does not appear to seriously urge that plaintiff
*acted* in the capacity of a lawyer, whereas he was only a
patent attorney, but appears to take the position that the
contract itself provides for the services of a lawyer, and
that plaintiff could not fill that requirement, and contends
that plaintiff agreed to perform for defendant certain per-
sonal services which fall into two distinct classes, to wit:
(a) Services usually and customarily performed by regis-
tered patent attorneys; and (b) services usually and cus-
tomarily performed exclusively by attorneys at law; and
that the real question involved herein is whether or not
a patent attorney, who is not an attorney at law, may
enforce a contract under which he undertakes and agrees
to prosecute and defend, or causes to be prosecuted and
defended, such actions at law for infringement of patents
and unfair competition as in his belief and judgment shall
be beneficial to his client, and that the action is one wherein
the plaintiff, as a registered patent attorney who is not an
attorney at law, seeks to have adjudicated his rights with

reference to a written contract of employment; and although in form it is an action for declaratory relief under the provisions of sections 1060 to 1062a of the Code of Civil Procedure, it is an attempt by plaintiff to seek specific performance of a contract for professional services under the guise of an action for declaratory relief, and that the complaint does not state a cause of action.

 With respect to the contention that the complaint fails to state a cause of action we need but cite the case of *Blakeslee* v. *Wilson,* 190 Cal. 479 [213 Pac. 495], the decision of which is applicable to and determinative of the question here presented, and clearly shows that this contention is not well taken. (See, also, *Lane Mortgage Co.* v. *Crenshaw,* 93 Cal. App. 411 [269 Pac. 672]; *Oldham* v. *Moodie,* 94 Cal. App. 88 [270 Pac. 688]; 8 Cal. Law Review, 133; 9 Cal. Law Review, 359, and 10 Cal. Law Review, 158.)

Defendant further contends that the contract is illegal and void and in support thereof urges the following points: (a) Plaintiff is not an attorney at law; (b) definition of the term "practicing law"; (c) by the terms of the contract plaintiff undertook to practice law; (d) one who is not an attorney at law cannot practice law; (e) one who is not an attorney at law cannot recover compensation for legal services; and (f) the contract is entire and not severable. Plaintiff admits points (a), (d), (e) and (f), leaving only points (b) and (c) to be considered.

Constituting the material parts of the contract necessary for a consideration of the issues to be determined by the court, and after in effect reciting that defendant is in the business of manufacturing a hair rinse which is being sold on the market under the name "Lavalon Rinsing Powder"; that she has an application pending in the United States patent office for letters patent on the composition of said rinse powder and contemplates filing further applications for letters patent on changes and improvements she may make from time to time; that she has adopted and is using the word "Lavalon" as a trademark and has filed application in said United States patent office for registration of said trademark; that she is building up a substantial trade on said rinse powder, with a limited capital; that she is selling said powder in distinctive packages and with distinctive literature which have become well known to the

trade; that an attempt is being made by S. Hikell and Company of Omaha, Nebraska, to place a similar powder on the market in substantially the same package for the purpose of deceiving the purchasing public; that it is likely that other firms may adopt similar measures in the future and that it will be necessary for defendant to take measures continually for the protection of her patent rights, trademarks, and the identity of her goods; that plaintiff is a registered patent attorney and is now prosecuting defendant's patent application and trademark application and certain opposition in connection therewith and will file further patent applications as the same may become necessary and is ready to protect the legal interests of defendant wherever the same may be invaded, by employing counsel when necessary for commencing and prosecuting infringement suit or suits for unfair competition; that defendant is not financially able at the present time to properly compensate plaintiff for services to be performed, the contract recites that defendant hereby retains said plaintiff as attorney for the purpose of filing and prosecuting patent and trademark applications and for protecting defendant against infringement and unfair competition for the period of ten years, the employment to be continued thereafter at the option of either party, and defendant agrees to pay plaintiff as consideration for such services a retainer equal to five per cent of the gross income of said business, to be paid on the fifteenth day of each month for the gross receipts of the preceding month; that plaintiff hereby accepts the employment as attorney for defendant and agrees to protect the interests of defendant against infringement and unfair competition with all reasonable care and to the best of his ability, to prepare and prosecute applications for patent and trademark protection whenever in the judgment of plaintiff the filing of such applications will advance the interests of defendant and where the expense involved is not out of proportion to the retainer received, and he further agrees to defend defendant or cause her to be defended when any suit or action is brought against her for infringement of any patent rights or trademarks or for unfair competition; that if either party should neglect to perform the obligations assumed in this contract, the other may terminate by giving notice, etc., provided that the alleged default shall

consist of the refusal of plaintiff to bring suit on the instructions of defendant against an alleged infringer or unfair competitor; the question of whether such suit falls within the limits of this contract shall be decided by arbitration, and further provides that the agreement has reference only to the present business of defendant as set forth above and to allied subjects within the natural expansion thereof, and that the duties of said plaintiff shall be confined to matters arising out of patent and trademark matters and unfair competition.

The parties appear to rely on the plain and ordinary signification of the language of the contract. And in fact the evidence shown by the record, in addition to the contract, is but little, if any, help to the court in its determination of the real question to be determined.

With respect to what constitutes "practice of law", in the 1932 supplement of California Jurisprudence, section 6, on page 16, of the article on "The Practice of Law", it is said: "The meaning of the phrase 'practice of law' is too broad to be brought within the limits of a single all-inclusive definition. The courts have adopted many definitions, some of which are only broad enough to cover the specific facts before them in the particular cases, and legislatures have also attempted to define the phrase in the enactment of statutes regulating the practice of law as a whole or prohibiting certain persons from engaging therein. One definition, frequently approved by the California courts, is thus phrased: 'As the term is generally understood the "practice of the law" is the doing or performing services in a court of justice in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' "

Defendant contends that the plain intent and meaning of the contract is found in the provisions thereof which for convenience in discussing the same will be divided into three paragraphs numbered and hereinafter referred to as paragraphs one, two and three.

Needless to say, the contract must be interpreted in its entirety and from a consideration of every word, sen-

tence and phrase, and if possible should always be interpreted so as to sustain its validity. In 6 California Jurisprudence, 268, section 168, it is stated as follows: "As between two permissible constructions, that which establishes a valid contract is preferred to that which does not, since it is reasonable to suppose that the parties meant something by their agreement, and were not engaged in an attempt to do a vain and meaningless thing. (*Pacific Wharf etc. Co.* v. *Standard American Dredging Co.*, 184 Cal. 21 [192 Pac. 847] ; *McVicker* v. *McKenzie*, 136 Cal. 656 [69 Pac. 495] ; *Jackson* v. *Puget Sound Lumber Co.*, 123 Cal. 97 [55 Pac. 788] ; *Herzog* v. *Purdy*, 119 Cal. 99 [51 Pac. 27], and others.) The parties are deemed to have intended a lawful, rather than an unlawful, act, and their agreement is to be construed, if possible, as intending something for which they had the power to contract. (*Smith* v. *Luning Co.*, 111 Cal. 308 [43 Pac. 967].)"

The following is also quoted from 6 California Jurisprudence, 269, section 168, in support of which some fifteen or twenty cases are cited: "All intendments being against fraud and in favor of fair dealing, it will not be presumed against a writing that it contemplated a violation of the law, unless that conclusion becomes irresistible from the very reading of the instrument. (*Estate of Wood*, 137 Cal. 129 [69 Pac. 900].) . . . And section 3451, Civil Code, provides that, 'an interpretation which gives effect is preferred to one which makes void'."

With respect to paragraph one, which reads as follows: "agrees to protect the interests of the said Maude Agnes Mingus Wheeler against infringement and unfair competition with all reasonable care and to the best of his ability", although standing alone it could not mean or import more than an agreement by a patent attorney to use all reasonable care and to the best of his ability protect the interests of defendant against infringement and unfair competition, read and considered in connection with this paragraph found in the contract, to wit: Plaintiff "is ready to protect the legal interests of the said Maud Agnes Mingus Wheeler wherever the same may be invaded, by employing counsel when necessary for commencing and prosecuting infringement suit or suits for unfair competition", clearly it cannot be held that under said paragraph one plaintiff agreed to practice law. At most, he agreed to

employ counsel, when necessary, to perform the services that are required to be performed by an attorney at law. Who, it might be asked, would be better qualified to render the services required than a registered patent attorney admitted to practice before the patent office of the United States with all the rights and privileges appertaining thereto, recognized by that office as a specially qualified expert in the field of patents and trademarks, and endowed with the technical and legal qualifications necessary to render valuable services to clients in that field?

At this point it may be stated that it is obvious that the finding that "defendant did not know that plaintiff was not an attorney-at-law", is contrary to the irresistible conclusion that must be reached from a consideration of the entire contract and contrary to the evidence.

■ With respect to paragraph two, which reads as follows: "to bring suit against infringers and unfair competitors where such suits in the best judgment of the said Harry C. Schroeder, will be beneficial to the interests of the said Maud Agnes Mingus Wheeler", the most that can be said of this paragraph, standing alone, is that plaintiff agreed to bring suits against infringement and unfair competitors where such suits in the best judgment of plaintiff will be beneficial to the best interests of defendant. Defendant in effect contends that under this provision she is deprived of the benefit of counsel and advice of a duly licensed attorney at law with respect to the nature and extent of her legal rights, duties and obligations. A question similar in purport to the question propounded with respect to the provisions of paragraph one might be applied here. That is, who would be better qualified to decide whether or not the bringing of such suits would be beneficial to the interests of defendant than a specially qualified expert in the field of patents and trademarks? Also it may be noted that the contract in effect provides that in the event plaintiff shall refuse to bring suit on the instructions of defendant against an alleged infringer or unfair competitor the question of whether such suit falls reasonably within the limits of this contract shall be decided by a board of arbitration, and in detail provides the manner of bringing about such arbitration. The compliance with this requirement is neither alleged nor proved.

With respect to paragraph three, which reads as follows: "and he further agrees to defend the said Maud Agnes Mingus Wheeler or cause her to be defended where any suit or action is brought against her for infringement of any Patent rights or Trade Marks or for unfair competition", it will be seen that plaintiff agrees to defend or cause defendant to be defended where any action or suit is brought against her for infringement or unfair competition. Reading and considering this paragraph in connection with all other paragraphs of the .contract forces the conclusion that plaintiff will, if necessary, employ counsel to defend such suit or action.

A consideration of the entire contract forces the irresistible conclusion that, as contended by plaintiff, the intention of the parties was that plaintiff should perform the necessary services as a patent attorney and act as defendant's agent and counselor in looking after her patent and trademark matters generally, employing counsel if and when necessary.

The question thus arises as to the legality and the enforceability of such a contract. That is, can a person who is not an attorney at law enforce a contract under which he agreed to if necessary employ the services of an attorney at law to assist in the performance of services, a portion of which services is to be and may be performed by such person?

As hereinbefore stated, it is conceded by both parties that one who is not an attorney at law not only cannot practice law, but cannot recover compensation for legal services by him performed, but there is no law prohibiting persons other than attorneys from recovering the reasonable value of their services. when performed at the request of another. (*Miller* v. *Ballerino,* 135 Cal. 566 [67 Pac. 1046, 68 Pac. 600].) In 6 Corpus Juris, page 721, it is stated as follows: "An unlicensed person may recover for services not performed in a court of record, and of a character the performance of which would not constitute the practice of law." (See cases therein cited.)

Where, as here shown, by solemn contract in writing admitted to have been entered into by and between parties under the terms of which plaintiff agreed to perform certain services which he was capable of performing and further

agreed to furnish the services of an attorney at law if said services should be beneficial and necessary and for and in consideration of which defendant agreed to pay plaintiff on a contingent basis, it cannot be held that the contract is illegal and void, neither is it unenforceable nor impossible of performance. With respect to the contention of defendant that plaintiff failed to perform, particularly urging that plaintiff failed to take steps to protect defendant against the infringement of S. Hikell and Company, in addition to the testimony of defendant admitting *her* failure and refusal to perform by refusing to make any further payments required under the contract, as hereinbefore stated, it need but be said that it was neither alleged nor proved that the question was submitted to arbitration as required by the plain provisions of the contract.

It is clear that plaintiff is entitled to a judgment decreeing that the contract is a legal contract and is entitled to an accounting.

For the reasons herein given the judgment appealed from is reversed, with directions to the trial court to proceed in accordance with the views herein expressed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.