(No. 21876.—

The People *ex rel.* The Chicago Bar Association, Relator, *vs.* The Motorists Association of Illinois, Respondent.

*Opinion filed December 22, 1933—Rehearing denied Feb. 8, 1934.*

John L. Fogle, (Charles Leviton, of counsel,) for relator.

Henry A. Blair, for respondent.

Mr. Chief Justice Orr delivered the opinion of the court:

This is an original proceeding in this court by information in the name of the People, on relation of the Chicago Bar Association and its grievance committee, against the Motorists Association of Illinois, a corporation organized under the laws of this State as not for pecuniary profit. Relator seeks to have respondent punished for contempt of this court for practicing law without a license and to enjoin it from continuing in such practice. Leave to file the information was granted and it was filed at the Feb-

ruary term, 1933. An answer was filed by respondent at the April term. Relator thereupon moved to make the rule absolute on the answer, to assess a penalty against respondent and to enjoin it from engaging in the practice of the law. It was thereupon ordered that the motion be treated as a demurrer to the answer and the parties were directed to file briefs. A brief has been filed by relator but respondent filed none.

The facts alleged in the petition, and either expressly or impliedly admitted by the answer, so far as material, are as follows: Respondent was incorporated on December 16, 1925, as an Illinois corporation "not for pecuniary profit." Its certificate of incorporation provides: "The object for which it is formed is to operate a non-profit civic association for the benefit of its members; to establish and maintain a touring bureau and bureaus of information on other matters of interest to motorists; to provide varied and general services to its members; to promote the best interests of motorists; to use all lawful means to secure legislation in the interests of motorists and to establish and maintain a club house and branches for the benefit of its members and to do all other things which may lawfully be of benefit to its members." For a number of years respondent has been engaged in operating a motor club, and its business has covered a large portion of this State. It has approximately fifty thousand so-called members or persons to whom it furnishes automobile insurance and other services. The character and extent of the services so furnished or rendered by respondent are disclosed and admitted but it denies that it has engaged in the practice of law. Advertising and other written or printed material, such as a monthly pamphlet entitled *The Illinois Motorist,* used for the purpose of soliciting business, copies of which are attached to the information, disclose the following:

Respondent maintained a "legal" department and advised its members that "For quick action in telephoning,

the heads of the different departments are listed below:
* * * Legal—Henry A. Blair, Mich. 2600." The same
circular or prospectus contained the following statement:
"Do it now. We will do the rest. We will explain about
the legal service, * * * as well as many other services
which each member receives free of any charge whatever."
The same pamphlet contains a heading in large, bold-face
type: "How our legal service has helped our members."
Opposite this heading is a pictorial representation of an
English judge on the bench, with wig, robe and gavel.
Below this is a photograph of Henry A. Blair, attorney
for respondent, together with a further heading in large,
black-face type: "Henry A. Blair, chief of our legal staff
of experts who handle automobile cases exclusively—thou-
sands of them—for our members only, without charge for
all necessary legal service." On the same page are copied
ten testimonial letters from members addressed to Blair,
indicating their satisfaction with the manner in which he
or some other member of the legal department of the club
had handled their claims for collection of damages in
amounts ranging from $27 to $95. Another page of the
same pamphlet is headed, "Plain language to automobile
insurance questions." It contains questions and answers on
various legal matters relating to liability for damages in
automobile cases, the Statute of Limitations, etc.

The foregoing all appeared in the June issue of *The
Illinois Motorist.* The July issue of that pamphlet con-
tained advertising matter similar to that of the June issue,
including the representation of the English judge, the photo-
graph of Blair, similar headings, and also copies of addi-
tional testimonial letters.

An application form used by respondent in soliciting
members, headed "Chicago and Cook county—Special pub-
licity offer—$39.50," contains the following:

"COLLISION CLAIMS (legal service).—The M. A. of I.,
through its legal department, will handle all damage claims

for or against members *without charge* for said legal services.

"INQUESTS AND ARRESTS (legal service).—The M. A. of I., through its legal department, will furnish a counsel at inquests arising out of accidents caused by the within described automobile being operated by the member or any member of his family. The M. A. of I. will further furnish counsel to represent them in police or justice courts when arrested for alleged infractions of the motor vehicle laws or ordinances. (*Intoxication or reckless driving charges excluded.*) The member, however, in each case must appear in person with our attorneys, *without charge for legal services.*

"TRAFFIC BUREAU.—Through this bureau speed maniacs, reckless and intoxicated motorists, are discovered and dealt with accordingly, safety campaigns conducted, intelligible traffic signs erected, competency tests promulgated and speed traps eliminated. Members are protected against such speed traps *without additional charge.*"

Another pamphlet issued by respondent contained the following:

"Here is what you get:

"COLLISION CLAIMS.—Handled for you thru our legal department *free.*

"INQUESTS AND ARRESTS.—Legal department will furnish counsel to represent you without charge."

Respondent employed a number of attorneys who rendered to individual members of the respondent services of the character advertised by it as above indicated.

It requires no discussion to demonstrate that the services so rendered by respondent for its members, through the attorneys employed by respondent, are legal services. (*People* v. *Peoples Stock Yards Bank,* 344 Ill. 462.) Although respondent denies that its conduct constituted the practice of law, its principal contention is that it is entitled to practice law by virtue of the fact that it is a corporation or-

ganized "not for profit," and that it is therefore not prohibited from practicing law. In support of this contention it relies upon "An act to prohibit corporations from practicing law, directly or indirectly, making the same a misdemeanor and providing penalties for the violation thereof." (Cahill's Stat. 1933, chap. 32, pars. 224-228.) Section 1 of the act prohibits corporations from practicing law. Section 5 provides that the act shall not apply to "corporations organized not for pecuniary profit." The same section, however, also provides as follows: "But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this State nor to solicit directly or indirectly professional employment for a lawyer."

In *People* v. *Peoples Stock Yards Bank, supra,* we recognized that it was within the power of the legislature to pass an act prohibiting corporations from practicing law and to provide a penalty for violations of the act, but we also indicated clearly that the legislature had no authority to license or permit a person to practice law in this State, and that such an act would be invalid if it sought in any way to tie the hands of this court in determining who should be permitted to practice law and in punishing those who engage in such practice without the permission of this court. (*In re Day*, 181 Ill. 73.) In *People* v. *Association of Real Estate Tax-payers*, 354 Ill. 102, following the well settled rule, we held that a corporation cannot be licensed to practice law, and that this rule applies to corporations organized not for profit.

There can be no question from this record but that respondent wrongfully engaged in the practice of law for several years. It claims to have discontinued such practice on March 1, 1933, after this court had granted leave to file the present information against it. While such cessation might afford a basis for refusal of an injunction against a recurrence of similar wrongful acts, it cannot, under the

circumstances of this case, be considered in mitigation of the offense. Since our decision in *People* v. *Peoples Stock Yards Bank, supra,* it has been clear that acts such as those of respondent constitute the practice of law. In the face of that decision respondent has continued in its wrongful conduct, in utter disregard of the authority of this court.

It is therefore ordered that respondent be held in contempt of this court, and that it pay to the clerk of this court a fine of $1000 and costs of this suit.

*Respondent found guilty of contempt.*