Chicago Bar Association et al., Appellees, v. United Taxpayers of America and Earl G. Teeter, Appellants.

Gen. No. 41,786.

Heard in the first division of this court for the first district at the June term, 1941. Opinion filed December 22, 1941. Rehearing denied January 5, 1942.

Anthony J. Sakelson, of Chicago, for appellants; Gerald T. Wiley and Richard F. Hahn, both of Chicago, of counsel.

CHARLES LEVITON, of Chicago, for appellees; CHARLES F. HOUGH, WERNER W. SCHROEDER and CUSHMAN B. BISSELL, all of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Chicago Bar Association and certain of its members filed a complaint in chancery against the United Taxpayers of America, a corporation not for pecuniary profit, and Earl G. Teeter, a certified public accountant, who both sides agreed should be treated as one, to enjoin them "from practicing law in any form, either directly or indirectly, or from holding themselves . . . out as having the right to practice law or the right to represent others in tax matters before the Department of Finance of the State of Illinois . . . or in preparing or filing claims for refunds of taxes" etc. Defendants filed an answer to which plaintiffs replied. There was a hearing before the court, a decree entered in accordance with the prayer of the complaint and defendants appeal.

The facts in short compass are that defendant Teeter, by letters, solicited from certain parties authority to represent them "in the preparation and presentation of claims for the credit and refund of Illinois Occupation taxes illegally collected from you," as stated in one of his letters, and in another letter to another party he asked for authority "to represent you in the preparation, presentation and prosecution of claims for the credit and refund of Illinois Retailers' Occupation taxes illegally collected from you." For these services one letter stated he would charge 50 per cent of the refund and the other letter, 25 per cent. These two letters were on the following letterhead: "EARL G. TEETER, Certified Public Accountant, Tax Counsellor, 176 West Adams Street, Chicago, State 6460" and were signed, "E. G. Teeter, Tax Counsel, United Taxpayers of America."

There was also mailed to one of the parties a typewritten document on the following letterhead: "UNITED TAXPAYERS OF AMERICA, Incorporated not for pecuniary profit, 176 West Adams Street, CHICAGO, State 6460." Part of this document is as follows: "CONTRACTORS ARE ENTITLED TO REFUND OF OCCUPATION TAXES ERRONEOUSLY COLLECTED," and it was stated that it had been held contractors engaged in the general building or construction business were not liable for the occupational taxes and that the department [of finance] was required to make refunds of cash or credit where the payment had been made through mistake of law or fact; that the credit on future taxes would be of no avail and therefore "the department is required to make such REFUNDS IN CASH. The statute requiring such refund is explicit. In view of the running of the Statute of Limitations immediate steps should be taken to protect your interest. Please fill out and return the enclosed form on receipt of which you will be advised as to the necessary procedure." There was also a blank form of claim to be filled out.

On the hearing it was agreed that Teeter had filed with the Department of Finance of Illinois, 34 claims of contractors which aggregated $23,449.69. Defendant Teeter was a certified public accountant but not admitted to practice law.

Plaintiffs' position is that what defendant Teeter did constituted the practice of law, while on the other side, Teeter contends that since he was a certified public accountant he had the right to file claims with the Department of Finance for persons or concerns, for the refund of taxes illegally collected and to represent such persons or concerns before the Department of Finance. In this connection his counsel in their brief say "That as a Certified Public Accountant he had the right to give the opinions and the advice he gave through himself or through the United Taxpayers of America, and that such opinions and advice

were incidental to the exercise of his rights as a Certified Public Accountant and as such do not constitute the practice of law.

"That the contracts of employment with the Austin Plumbing Company and F. G. Ring and Company do not compel either of the defendants to do any act which would be the practice of law such as going to the Superior or Circuit Court, nor representing the taxpayer before any formal hearing in the Department of Finance, which would be tantamount to taxpayers' day in Court."

Section 12 of the Retailers' Occupation Tax Act [par. 451, ch. 120, Ill. Rev. Stat. 1941 (Jones Ill. Stats. Ann. 119.464)] provides: "The Department is authorized to make, promulgate, and enforce such reasonable rules and regulations relating to the administration and enforcement of the provisions of this Act as may be deemed expedient. . . .

"All hearings provided for in this Act shall be held in the county wherein the taxpayer resides or has his principal place of business: . . .

"The Circuit and Superior Court of the County wherein the hearing is held shall have power by writ of certiorari to the Department to review all questions of law and fact determined by the Department in administering the provisions of this Act presented by such record."

By § 6, par. 445 of the same act it is provided that if any tax penalty or interest under the act has been paid which was not due "whether as the result of a mistake of fact or an error of law, then such amount shall be credited against any tax due, or to become due, under this Act from the person who made the erroneous payment, or such amount shall be refunded to such person by the Department. . . .

"Claims for credit or refund shall be filed upon forms provided by the Department." That "the Department shall examine the same and determine the

amount of credit or refund to which the claimant is entitled . . . which amount shall be prima facie correct. In case the Department determines that the claimant is entitled to a refund such refund shall be made only from such appropriation as may be available for that purpose."

Pursuant to the provisions of § 12 of the act, the Department of Finance made Rule 1 which is as follows: "Persons qualified by the University of Illinois as Certified Public Accountants, or persons holding a Certificate of Registration as a Public Accountant from the Department of Registration and Education of the State of Illinois may be designated by taxpayers to appear and represent them in any matter in hearing before the Department of Finance."

It is agreed that Teeter was a certified public accountant, but as we understand the argument of counsel for plaintiffs, what Teeter did constituted the practice of law and that Rule 1, made by the Department of Finance, is void and "Only attorneys-at-law have the right to represent others before administrative bodies, such as the Department of Finance."

The question of what constitutes the practice of law has been before our Supreme Court a number of times but we think it necessary to refer to but one of such cases. *People ex rel. Chicago Bar Assn. v. Goodman,* 366 Ill. 346.

In that case an information was filed by leave of court praying that Goodman be held in contempt of court for practicing law. The court found him guilty as charged and imposed a fine of $500. Goodman was not a lawyer; he had offices in Chicago. As stated by our Supreme Court, he was engaged "in the business of handling and adjusting workmen's compensation claims." He solicited such claims by advertisements, cards, letters, radio, etc. The claims were all taken on a contingent fee basis, usually 20 per cent of the amount recovered. After he obtained a contract of

employment from the injured workman, he negotiated for settlement and if effected, he prepared and filed a petition with the Industrial Commission and obtained an order approving the settlement. In case no settlement was reached he prepared and filed a claim for adjustment and had a hearing before the arbitrator of the Commission where he presented evidence. In the event an award was allowed and an appeal taken to the Industrial Commission as a whole, he followed the matter. Only when an especially difficult question of law or fact arose, or when appeals were taken to the circuit court did he employ a member of the bar. Few cases were represented by attorneys. When he discovered that the claim was enforcible at common law, and not under the Workmen's Compensation Act, he negotiated for settlement. If a settlement was not reached he employed an attorney for that purpose.

The court held that what he did was the practice of law and said: ''The power to regulate and define the practice of law is a prerogative of the judicial department as one of the three divisions of the government created by article 3 of our constitution. The legislative department may pass acts declaring the unauthorized practice of law illegal and punishable. Such statutes are merely in aid of, and do not supersede or detract from, the power of the judicial department to control the practice of law. . . . The power is inherent in this court to prescribe regulations for the study of law and the admission of applicants for the practice of that profession. (*People v. Peoples Stock Yards State Bank*, 344 Ill. 462; . . . .)

'' . . . These prerequisites are not for the purpose of creating a monopoly in the legal profession nor for its protection, but are for the better security of the people against incompetency and dishonesty. (*People v. Alfani*, 227 N. Y. 334.)''

Continuing the court said: ''In *People v. Peoples Stock Yards State Bank, supra,* at page 475, the court stated that the definition of the practice of law therein set forth was substantially correct. This court and other courts have always been reluctant to adopt an all inclusive definition of the term 'practice of law.' . . . . The procuring of an agreement enabling an unlicensed person to control the negotiations and the litigation that might follow on the failure of the negotiations, and the hiring of licensed attorneys to conduct litigation for others, for the financial profit of the hirer, has been defined as the practice of law. . . .

''It is urged that the practice by the respondent before the Industrial Commission is before an administrative body, and that the respondent, therefore, is not practicing law because he is not before a court. That precise question is one of first impression in this court. . . . The respondent urges that because the legislative act relating to the Industrial Commission grants to that body the right to promulgate rules governing the procedure before it, and the commission has adopted a rule permitting a party to appear before it, and the commission has adopted a rule permitting a party to appear before it by his attorney or 'agent,' that he, as agent of the claimant, may lawfully appear before the commission as the representative of the client and try his claim there. Even though the Industrial Commission is merely an administrative body, yet, if what the respondent did for a fee, in the presentation of and hearing of a petitioner's claim before that body, amounted to the practice of law, a rule of the commission purporting to grant him that privilege is of no avail to him. The General Assembly has no authority to grant a layman the right to practice law. (*In re Day, supra.*) It follows that any rule adopted by the commission, purporting to bestow such privilege upon one not a

duly licensed attorney at law, is void. Nor can the General Assembly lawfully declare not to be the practice of law, those activities the performance of which the judicial department may determine is the practice of law." The court then refers to and discusses the case of *Goodman v. Beall*, 130 Ohio St. 427, points out a distinction between the Ohio and Illinois statutes and continuing says: "In so far as the opinion in the *Beall* case, *supra*, may appear to conflict with our views as here expressed, we decline to follow that case."

While the *Goodman* case involved the work required to be done pursuant to the provisions of the Workmen's Compensation Act and the case before us involves the Retailers' Occupation Tax Act, we think the reasoning of our Supreme Court is applicable to the facts in the case before us, and to the requirements of the latter act. Section 6 of the Retailers' Occupation Tax Act provides for the filing of a claim, for the refund of taxes improperly paid, with the Department of Finance. The matter must there be considered by that department, hearings may there be required and if the result is unsatisfactory to the claimant, application would then probably be required to the circuit or superior court for a writ of certiorari, as provided in § 12 of that act.

We think what Teeter did was the practice of law as defined by our Supreme Court in the *Goodman*, and other cases. Moreover in the letters hereinbefore referred to which he sent to claimants he signed his name as "Tax Counsel" and the letterheads designated him as follows: "Earl G. Teeter, Certified Public Accountant, Tax Counsellor." And although it is said the United Taxpayers of America was incorporated not for pecuniary profit, Teeter was demanding from 25 to 50 per cent of the amount of the refund.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.