H. L. BUMP et al., Petitioners, v. DISTRICT COURT OF POLK COUNTY et al., Respondents.

No. 45639.

OCTOBER 27, 1942.

H. L. Bump, of Des Moines, for petitioners.

Edward L. O'Connor, of Iowa City, and Comfort, Comfort & Irish, of Des Moines, for respondents.

HALE, J.—The petitioners in this proceeding are members of the Polk County Bar Association and constitute the "Committee on Unauthorized Practice of Law," and as such committee and as members of the bar, for themselves and other attorneys, brought an action in the district court of Polk county, asking for an injunction and citation for contempt against the defendant J. C. Rockwell, operating under the trade name of the

Taxpayers Research Bureau. The petition alleged that Rockwell, who was not a lawyer, was engaged in soliciting from various persons, firms, and corporations their claims for refund on taxes; that this solicitation was made in various ways, by telephone calls, by written letters, and personally. The petition alleged that the defendant had also solicited claims for money deposited by the receivers of closed banks where the receiver was unable to locate the person entitled thereto; that in so proceeding, defendant was practicing law without a license and was in contempt of court. The action, on plaintiffs' motion, was transferred to law, and thereafter, on motion of defendant, respondent herein, the court struck out that part of the petition and prayer asking for injunction. A second motion to strike and a demurrer to the petition were then filed and afterward overruled. The written explanation of defendant followed, as authorized by Code section 12546, Code of 1939.

As shown by the evidence in the trial court, through the means set out above defendant procured assignments of many claims in the bank receiverships, for which he paid 50 cents on the dollar, and also about 1,300 claims for tax refunds, some of which he filed with the board of supervisors, and had petitions prepared for others. He also employed salesmen to solicit for the tax-refund claims, which were prepared for him by a lawyer. No legal action or suit had yet been brought on the tax refunds.

The manner in which defendant proceeded in the collection of these tax claims was as follows: He procured from the persons to whom refunds were due under a decision of this court an agreement and assignment, of which the following is a copy in blank:

"TAXPAYERS RESEARCH BUREAU
Southern Surety Building
Des Moines, Iowa

AGREEMENT AND ASSIGNMENT

For valuable consideration (being services of Taxpayers Research Bureau), the undersigned does hereby sell, assign, transfer and convey unto the Taxpayers Research Bureau all the right, title, and interest which the undersigned has in and

to any and all claims and rights of refund to certain taxes collected from the undersigned by the Treasurer;

of................................County, Iowa, for the years........................
covering the following described property, situated in said County:

The undersigned does further grant unto the said Trustee full power and authority to do all the acts necessary for the collection of said claim, including the maintenance of legal proceedings, either in the name of the undersigned or in the name of said Trustee and to receive and receipt for payment of said refund in the name of the undersigned or in the name of said Trustee.

Signed..............................................19........

-------------------------------------------------

Address...........................................

Accepted:

TAXPAYERS RESEARCH BUREAU

By.................................................................

### AGREEMENT

It is agreed that Taxpayers Research Bureau, party of the first part, shall without incurring any liability upon part of the second part, present a tax refund claim for said part of the second part and shall receive for services 50% of any sums collected under said claim and pay over the balance to second party.

Taxpayers Research Bureau agrees to deposit all funds collected under this agreement in its Special Account at Bankers Trust Co. in Des Moines and to disburse to Second Party from said account ½ of said collection made under this agreement.

Signed............................................, 19........

TAXPAYERS RESEARCH BUREAU

----------------------------------------------------------------

Party of First Part

----------------------------------------------------------------

Party of Second Part''

The names of the taxpayers were obtained from the tax

rolls. No money was paid to the taxpayers at the time the assignments were procured.

The matter of money due from closed banks was handled in another way. In the clerk's office was a list of the owners of these unclaimed funds. After the names were copied from such list, defendant sent to them a letter, of which the following is a sample:

> "TAXPAYERS RESEARCH BUREAU
> General offices—Southern Surety Building
> Des Moines, Iowa
> January 20, 1940.

Mr. J. Elton Carter
2420 East 25th Street
Des Moines, Iowa
Dear Mr. Carter:

> 'Finders Keepers, Losers Weepers—'

Not this time. Our researches have found a sum of money for you. We feel that in making this available to you quickly, in cash, and as finder's fee, we are entitled to divide it fifty-fifty.

Enclosed you will find a sight draft on us, amounting to one-half of the amount recoverable.

You may exercise three choices:

(a) Sign the draft; place it in enclosed envelope and mail it to our bank. The bank will remit.

(b) Deposit properly signed draft to your account—it will be paid.

(c) Call at our office for the cash.

We are sure you will be pleased with this service.

> Very truly yours,
> TAXPAYERS RESEARCH BUREAU

JCR:G
> Signed by J. C. Rockwell
> J. C. Rockwell"

The sight draft mentioned in the letter is in the following form:

"PAYABLE THROUGH
BANKERS TRUST COMPANY
DES MOINES, IOWA
This Draft will not be
honored unless presented
within ten days from date.

Des Moines, Iowa, Jan. 22, 1940

Pay to the order of J. Elton Carter

Three and 59/100      Dollars      $3.59

Value Received and Charge      with exchange
to Account of

To: TAXPAYERS RESEARCH BUREAU
     Des Moines, Iowa

------------------------------------------------------------"

With the application for injunction eliminated, the hearing in contempt proceedings began on December 26, 1940. At the trial some oral testimony was taken, including the testimony of Rockwell himself, but the evidence showed the facts as heretofore indicated; and there was very little dispute in the evidence as to the manner in which the operations were conducted. On January 4, 1941, the court entered judgment, finding that it had jurisdiction of the parties and subject matter and authority to punish for contempt, and that the testimony did not amount to the unauthorized practice of law, and denying plaintiffs' petition for contempt. Plaintiffs thereupon applied to this court for writ of certiorari, which was granted and writ issued, and the cause is now before us on such petition and record thereon. Question was made as to the form of proceedings in an action of this kind.

We think that the proper proceeding against a person illegally and without authority practicing law is by contempt, and that it may also be by injunction, and we are satisfied that not only under the provisions of the Code of 1939, section 12542, has the court the power to punish for contempt but that it may also do so under the inherent power of the court.

I. Section 12542 of the Code, in addition to the provisions mentioned in section 12541, provides:

"In addition to the above, any court of record may punish the following acts or omissions as contempts: * * *

2. Assuming to be an officer, attorney, or counselor of the court, and acting as such without authority. * * *"

It has been held by the courts of practically every state where such question has arisen that unauthorized practice of law may be punished as contempt. See State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95, Ibid., 132 Neb. 166, 271 N. W. 282; State ex rel. Johnson v. Childe, 139 Neb. 91, 295 N. W. 381; State ex rel. Wright v. Hinckle, 137 Neb. 735, 291 N. W. 68; State ex rel. Hunter v. Daugherty, 136 Neb. 490, 286 N. W. 783; Danford v. Superior Court, 49 Cal. App. 303, 193 P. 272; People ex rel. Colorado Bar Assn. v. Erbaugh, 42 Colo. 480, 94 P. 349; People ex rel. Colorado Bar Assn. v. Ellis, 44 Colo. 176, 96 P. 783; People ex rel. v. Taylor, 56 Colo. 441, 138 P. 762; Anderson v. Coolin, 27 Idaho 334, 149 P. 286; In re Eastern Idaho L. & Tr. Co., 49 Idaho 280, 288 P. 157, 73 A. L. R. 1323; In re Brainard, 55 Idaho 153, 39 P. 2d 769; In re Bailey, 50 Mont. 365, 146 P. 1101, Ann. Cas. 1917B, 1198; In re White, 54 Mont. 476, 171 P. 759; New Jersey Photo Eng. Co. v. Schonert & Sons, 1923, 95 N. J. Eq. 12, 122 A. 307; Bowles v. United States, 1931, 4 Cir., Md., 50 F. 2d 848; People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; People ex rel. Chicago Bar Assn. v. Motorists Assn., 1933, 354 Ill. 595, 188 N. E. 827; Rhode Island Bar Assn. v. Automobile Service Assn., 55 R. I. 122, 179 A. 139, 100 A. L. R. 226.

That there is also the remedy of injunction, see Johnson v. Purcell, 225 Iowa 1265, 282 N. W. 741; People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bk., supra; State ex rel. Junior Assn. v. Rice, 236 Wis. 38, 294 N. W. 550; Grand Rapids Bar Assn. v. Denkema, 290 Mich. 56, 287 N. W. 377; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356, and cases cited in note thereto.

Under the Constitution of Iowa, vesting judicial power exclusively in the courts (Article V, section 1) and section 12542 of the Code, the courts of this state are vested with complete authority to punish by contempt proceedings unlawful

practice. See, also, Johnson v. Purcell, supra, and cases cited therein.

It is stated in Brand's "Unauthorized Practice Decisions," 1937, at page XII: "The inherent power of the courts as to contempt and disbarment has been consistently recognized since an early date. In 1899 the principle of inherent judicial power was sustained as to bar admissions," citing In re Day, 1899, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519. "Subsequently it was judicially applied to ambulance chasing and to the unauthorized practice of the law," citing, among many others, In re Morse, 1924, 98 Vt. 85, 126 A. 550, 36 A. L. R. 527; People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bk., 1931, 344 Ill. 462, 176 N. E. 901; Unger v. Landlords Management Corp., 114 N. J. Eq. 68, 168 A. 229; State ex rel. Boynton v. Perkins, 138 Kan. 899, 28 P. 2d 765; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356; Rhode Island Bar Assn. v. Automobile Service Assn., 1935, 55 R. I. 122, 179 A. 139, 100 A. L. R. 226; In re Opinion of the Justices, 1935, 289 Mass. 607, 194 N. E. 313; Meunier v. Bernich, La. App., 170 So. 567; State ex rel. Wright v. Barlow, 1936, 131 Neb. 294, 268 N. W. 95; Richmond Assn. of Credit Men v. Bar Assn. of City of Richmond, 1937, 167 Va. 327, 189 S. E. 153; State ex rel. Freebourn v. Merchants Credit Service, 1937, 104 Mont. 76, 66 P. 2d 337; People ex rel. Chicago Bar Assn. v. Goodman, 1937, 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1.

Under the uniform holdings of the courts, the unauthorized practice of the law constitutes a contempt of court. There seems no doubt of the inherent power of the court or of the procedure by contempt being universally recognized.

▮ Respondents argue that all findings of the trial court that have support in the record should be sustained by the supreme court, citing various authorities. This is true of proceedings in certiorari in general, where there are questions of fact to be determined. The writ lies where an inferior tribunal, board, or officer, exercising judicial functions, exceeds its proper jurisdiction or otherwise acts illegally, and there is no plain, adequate, or speedy remedy at law. Code of 1939, section 12456. But we have also recognized that where there is no evidence

to support the finding under review, a question of law is presented and certiorari will lie.

The evidence in this case is undisputed and we are of the opinion that it is our duty to review and determine the finding as a matter of law. This matter is fully discussed in our most recent case, dated February 17, 1942, Lineberger v. Bagley, 231 Iowa 937, 2 N. W. 2d 305, and cases cited. We hold that the proceedings for contempt are proper, that it is the right and duty of the court to proceed by contempt in matters of this kind, and that the matter must be determined herein on the record presented us, as a matter of law.

II. But the important issue in this case and the gist of the action is: Were the actions of Rockwell, under the record, such as amount to unauthorized practice of the law? Many cases have arisen in many jurisdictions involving this question, and more frequently in later years than formerly.

Under the head "Attorneys at Law," the subject is treated in 5 Am. Jur. 262–272, sections 17, 18, 34; also in 7 C. J. S. under the head of "Attorney and Client," 702, 703, section 3, and in the supplementary sheets. And, under "Practice of Law" in 33 Words and Phrases (Permanent Edition), 193 et seq. and pocket parts thereto, some 130 or more illustrations from many cases are given, defining what does and does not constitute such practice.

A definition is given in 7 C. J. S. 702, 703, section 3, where it is stated:

"The general meaning of the term, 'practice law' or 'practice of law,' is of common knowledge, although the boundaries of its definition may be indefinite as to some transactions. As generally understood, it is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice," citing Depew v. Wichita Assn. of Credit Men, 142 Kan. 403, 49 P. 2d 1041, and other cases, "and, in a larger sense, it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." Citing

various cases. "To 'practice law' is to carry on the business of an attorney at law; to do or practice that which an attorney or counselor at law is authorized to do and practice; to exercise the calling or profession of the law, usually for the purpose of gaining a livelihood, or at least for gain * * *."

Many cases are cited in addition to the text. See 7 C. J. S. 704, section 3.

The definition in 5 Am. Jur. 262, section 2, states:

"The practice of law is not limited to the conduct of cases or litigation in court; it embraces the preparation of pleadings and other papers incident to actions and special proceedings, the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing. In general, all advice to clients, and all action taken for them in matters connected with the law, incorporation services, assessment and condemnation services contemplating an appearance before a judicial body, the foreclosure of a mortgage, enforcement of a creditor's claim in bankruptcy or insolvency proceedings, and conducting proceedings in attachment and in matters of estates and guardianship have been held to constitute law practice, as do the preparation and drafting of all kinds of legal instruments, where the work done involves the determination by a trained legal mind of the legal effect of facts and conditions. * * * Other matters of a legal nature which are held to be an illegal practice of law by a corporation include the maintenance of a legal department to give free legal advice, the furnishing of legal services for members of a protective association, and the maintenance of a collection agency, but not the mere fact of paying the expenses of a particular litigation or the retainer of an attorney on an annual salary basis to attend to and conduct a corporation's own legal business."

The text is supported by many authorities noted therein.

There is no question that the preparation of pleadings, management of litigation for clients, advice to clients of their legal rights and all actions taken by them connected with the law, by one not a member of a bar, constitutes the illegal practice of law. In Barr v. Cardell, 173 Iowa 18, 31, 155 N. W. 312, 316, the defendant's right to the office of municipal judge was

assailed, one of the grounds being that he was not a practicing attorney at law at the time of his election, as required by statute. But the supreme court held otherwise, and defined the practice in a quotation from In re Duncan, 83 S. C. 186, 65 S. E. 210, 24 L. R. A., N. S., 750, 18 Ann. Cas. 657:

" 'It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all actions taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law.' " Citing, also, Eley v. Miller, 7 Ind. App. 529, 34 N. E. 836.

The opinion in the Barr case then says:

"One may be a practicing attorney in following any line of employment in the profession. If what he does exacts knowledge of the law and is of a kind usual for attorneys engaging in the active practice of their profession, and he follows some one or more lines of employment such as this, he is a practicing attorney at law, within the meaning of the statute."

Many definitions are found in the authorities, embracing, as heretofore stated, matters not performed in connection with the courts.

In re Matthews, 57 Idaho 75, 62 P. 2d 578, 111 A. L. R. 13, and annotations thereto, states:

"The practice of law as generally understood is the doing or performing services in a court of justice in any matter depending therein throughout its various stages, but in a larger sense includes legal advice and counsel, and the preparation of instruments and contracts by which legal rights are secured," citing various cases.

And in the annotations to said case, in 111 A. L. R. 13, on pages 20, 21, the following is stated in the text:

"It has been pointed out that it is practically impossible to frame any comprehensive and satisfactory definition of what constitutes the practice of law, it being necessary to decide each case largely upon its own particular facts. * * * It is, of course, well established that the practice of law, within the meaning of constitutional or statutory prohibitions or regulations or license requirements, is not confined to practice in the courts." Citing cases from the United States Supreme Court and many state courts, including Barr v. Cardell, 173 Iowa 18, 155 N. W. 312.

See, also, In re Shoe Mfrs. Protective Assn., 295 Mass. 369, 3 N. E. 2d 746; Rhode Island Bar Assn. v. Automobile Service Assn., 55 R. I. 122, 179 A. 139, 100 A. L. R. 226.

Petitioners argue that advertising and solicitation of contracts, the performance of which will involve the rendition of legal services, constitute the practice of law. These cases, cited among others, support this rule: In re Eastern Idaho L. & Tr. Co., 49 Idaho 280, 288 P. 157, 73 A. L. R. 1323; Smallberg v. State Bar, 212 Cal. 113, 297 P. 916; Howe v. State Bar, 212 Cal. 222, 298 P. 25; Creditors National Clearing House v. Bannwart, 227 Mass. 579, 116 N. E. 886, Ann. Cas. 1918C, 130; State ex rel. Junior Assn. v. Rice, 236 Wis. 38, 294 N. W. 550; Rhode Island Bar Assn. v. Automobile Service Assn., 55 R. I. 122, 179 A. 139, 100 A. L. R. 226.

And petitioners argue that the furnishing or agreeing to furnish counsel by persons not members of the bar constitutes the illegal practice of law. Many cases support this proposition. See Goodman v. Motorist's Alliance, 29 Ohio N. P., N. S., 31; People ex rel. Los Angeles Bar Assn. v. California Protective Corp., 76 Cal. App. 354, 244 P. 1089; People ex rel. Chicago Bar Assn. v. Motorists Assn., 354 Ill. 595, 188 N. E. 827; People ex rel. Illinois Bar Assn. v. Peoples Stock Yards State Bk., 344 Ill. 462, 176 N. E. 901.

Petitioners cite Chicago Bar Assn. v. United Taxpayers, 1941, 312 Ill. App. 243, 38 N. E. 2d 349. In this case a certified public accountant, who described himself as "Tax Counselor," and who solicited authority to represent taxpayers in preparation and presentation of claims to department of finance for refund of retailers' occupation taxes, was engaged in the un-

authorized "practice of law" so as to be subject to injunction, where Retailers' Occupation Tax Act provided for filing of claim and for refund of taxes improperly paid with department of finance, and for hearing by department, and for writ of certiorari to circuit court or superior court if result should prove unsatisfactory to claimant. This case cited People ex rel. Chicago Bar Assn. v. Goodman, 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1. Goodman was not a lawyer. He had offices in Chicago and was engaged in the business of adjusting workmen's compensation claims. Such claims were taken on a contingent-fee basis under the contract of employment of the injured workman. Goodman would then negotiate for settlement, would file a petition and obtain an order approving the settlement. Occasionally he employed a member of the bar, and in a few cases he was represented by attorneys. In that case it was held that he was engaged in the illegal practice of the law. The Goodman case also cited the case of People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bk., 1931, 344 Ill. 462, 176 N. E. 901, and adopted the definition of the "practice of law" as therein set forth as substantially correct. This case (Stock Yards case) is a contempt case. It defines the practice of law as not only appearance in court in connection with litigation but also services rendered out of court; that in litigated matters the "practice of law" involves not only actual representation of client in court but also covers services rendered in advising client as to his cause of action or defense, and it also includes giving of advice or rendering services requiring use of legal skill or knowledge. In substance, the court said that the bank was engaged, through attorneys in its employ, in performing nearly every kind of legal service that an attorney might be called upon to perform, and collecting attorney's fees therefor, for several years, thereafter preparing documents and rendering other services involving use of legal knowledge and skill, and was held to be engaged in unauthorized "practice of law."

In the Chicago Bar Association case, supra, at page 250 of 312 Ill. App., page 351 of 38 N. E. 2d, in referring to the Goodman case, which it quotes liberally, the court said:

"While the Goodman case involved the work required to be

done pursuant to the provisions of the Workmen's Compensation Act and the case before us involves the Retailers' Occupation Tax Act, we think the reasoning of our Supreme Court is applicable to the facts in the case before us, and to the requirements of the latter act. Section 6 of the Retailers' Occupation Tax Act provides for the filing of a claim, for the refund of taxes improperly paid, with the Department of Finance. The matter must there be considered by that department, hearings may there be required and if the result is unsatisfactory to the claimant, application would then probably be required to the circuit or superior court for a writ of certiorari, as provided in §12 of that act. We think what Teeter did was the practice of law as defined by our Supreme Court in the Goodman, and other cases. Moreover in the letters hereinbefore referred to which he sent to claimants, he signed his name as 'Tax Counsel' and the letterheads designated him as follows: 'Earl G. Teeter, Certified Public Accountant, Tax Counselor.' And although it is said the United Taxpayers of America was incorporated not for pecuniary profit, Teeter was demanding from 25 to 50 per cent of the amount of the refund.''

In this connection we refer to the agreement and assignment of the Taxpayers Research Bureau with its customers, where the latter part of the agreement provides that the research bureau will ''do all the acts necessary for the collection of said claim, including the maintenance of legal proceedings.'' The fact that the legal or court work was to be done by an attorney would not render the respondent less liable than if he had agreed to perform such services by himself; and such is the ruling in People ex rel. Chicago Bar Assn. v. Goodman, supra, 336 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1.

Among recent cases involving the question of what actually constitutes the illegal practice of law is Liberty Mut. Ins. Co. v. Jones, 344 Mo. 932, 956, 130 S. W. 2d 945, 954, 125 A. L. R. 1149. This case exhaustively cites many of the cases where the question has been determined, and again states the difficulty of giving an all-inclusive definition of the practice of law. Citing Clark v. Austin, 340 Mo. 467, 101 S. W. 2d 977, as paraphrased by the Liberty case:

" 'It will be sufficient for present purposes to say that one is engaged in the practice of law when he, for a valuable consideration, engages in the business of advising persons, firms, associations or corporations as to their rights under the law, or appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights of their clients under the law. Otherwise stated, one who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law.' "

Among other things, the court says that the doing of any single act out of court, in a representative capacity, that a lawyer might do, will not necessarily convict a layman of engaging in the law business. The very term itself implies that he must have engaged in the business or held himself out, as some cases say, citing many cases and Brand on "Unauthorized Practice Decisions," 540. The court says that the holding out may be evidenced by repeated acts indicating a course of conduct or by the exaction of a consideration, and distinguished between the various acts which might constitute illegal practice and those which do not.

While accountants, auditors, and others have been held not to be engaged in illegal practice in suggesting how to reduce taxes, and the giving of advice and the making of tax returns have been held not to constitute the illegal practice of the law, yet the employment to secure the reduction of the assessment of real estate for taxation purposes, and the suing out of a writ of certiorari to review an assessment by tax commissioners, contemplates and necessarily includes the practice of law. 111 A. L. R. 37. People ex rel. Trojan Realty Co. v. Purdy, 1916, 174 App. Div. 702, 162 N. Y. S. 56. In this case the attorney organized a corporation under the name of "Expert Property Appraisers, Inc.," to determine, as expert appraisers, the value

of real property and act as agents in securing reduction of taxes and assessments thereof.

See, also, Crawford County Treas. v. McConnell, 1935, 173 Okla. 520, 49 P. 2d 551, wherein contracts entered into between the owner of a so-called "taxpayers' association" and taxpayers were held illegal as calling for the performance of legal services by the former, who was unlicensed to practice law, where by such contract the individual in question was authorized to determine the legality of taxes assessed against the property, to protest taxes deemed by him to be illegal, prepare and file with the county treasurer protest notices, and, if necessary, employ attorneys to file suit (which the court pointed out would in any case be essential under the statute to recovery of taxes paid under protest). The McConnell case involved many facts similar to the facts in the case at bar.

The sometimes quoted restricted definition of what constitutes the practice of law in no way covers the ground, as in nearly every case where a definition has been attempted to be given it includes other than the mere appearance in court and is not confined to practice therein, but the larger meaning completes the definition in nearly every instance, i. e. that it includes legal advice and counsel, the preparation of instruments and contracts by which legal rights are secured, although such matter may or may not be pending in a court, that it includes conveyances, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all actions taken for them in matters connected with the law. An attorney is one who engages in any of these branches of the practice of law.

Respondent cites Cohn v. Thompson, 1932, 128 Cal. App. Supp. 738, 16 P. 2d 364, in support of his views. An examination of this case shows that the facts therein do not correspond with the facts of the instant case. The Cohn case was a civil suit brought for the collection of the amount due on a contract, and the defense was that the plaintiff was engaged in the unlawful practice of law and the assignment of the claim to him by the defendant was illegal and void as it was in derogation of the express provisions of the law, against public policy, and tends to aid and abet an unlicensed person in the practice of law or to receive compensation therefrom. But the plaintiff

was a patent attorney and was authorized by contract to hire an attorney at his own expense to prosecute the suit. But he did not agree to furnish any legal service for the assignor. The case involves a simple business arrangement and not the continued business, such as the facts show in the present case.

And to the same effect is Schroeder v. Wheeler, 1932, 126 Cal. App. 367, 14 P. 2d 903. The facts in neither of these cases make them parallel to the case at bar.

We have referred throughout to the collection of the tax claims. The assignment of the unpaid depositors' balances, while conducted in a different manner, it seems to us would also constitute illegal practice; it was a form of assignment, yet conducted as it was, it has so close a similarity to the collection of the tax claims that it would indicate the assignment was merely, a method of collection. Had the respondent been an attorney at law, his actions in respect to the depositors' claims would have been subject to disapproval or punishment. See Ryan Bros. v. Ashton, 42 Iowa 365; Shropshire v. Ryan, 111 Iowa 677, 82 N. W. 1035; Donaldson v. Eaton & Estes, 136 Iowa 650, 114 N. W. 19, 14 L. R. A., N. S., 1168, 125 Am. St. Rep. 275; Roten v. Tesdell & Mackaman, 195 Iowa 1329, 192 N. W. 442, 30 A. L. R. 180. An attorney is subject to the discipline of the court for irregular practices, while the layman who engages in similar actions can be reached only by the more difficult processes of injunction or contempt. It would be strange to permit to a layman what is condemned and forbidden to an attorney. The rules prescribing the duties of attorneys were designed for the protection of the public, and it is not only unethical for an attorney to solicit employment, but "it is generally held that 'no recovery can be had by the attorney for services rendered under a contract of employment procured by solicitation by one employed by him to solicit claims." 5 Am. Jur. 366. We do not mean to say that a claim may not be assigned or purchased, but the business conducted, as the facts here show, amounts to much more than that. We see no reason why the claims as to deposits, whatever their form, may not properly be classed with those involving public tax claims, the collection of which, by the methods pursued by the respondent, by one

.not an attorney, would be the unauthorized practice of the law.

We quote the following from the report of the 1941 committee of the American Bar Association on unauthorized practice of the law, found on page 268, volume 66, Reports of American Bar Association:

"The public, far more than the lawyers, suffers injury from unauthorized practice of law. The fight to stop it is the public's fight. No man is required to employ a lawyer if he does not wish to. But every man is entitled to receive legal advice from men skilled in law, qualified by character, sworn to maintain a high standard of professional ethics, and subject to the control and discipline of the court. Not only this, he must be served disinterestedly by a lawyer who is *his* lawyer, not motivated or controlled by a divided or outside allegiance.

"Unauthorized practice of law is the attempt by laymen and corporations to make it a business for profit of giving the public, as a substitute, the services of unqualified and unprofessional persons, or to employ and furnish for profit, directly or indirectly, the services of lawyers who may be willing to sabotage professional ethics in order to secure employment.

"In either case, the public is. cheated; either by receiving incompetent and unethical advice, or by being served by lawyers who are not disinterested, whose real client is not the person advised but the entrepreneur furnishing the services."

To the same effect is the following paragraph of the report of the committee for 1942, found on page 217 of volume 67 of the Reports of American Bar Association for 1942. In reporting its actions, after stating the reasons and necessity for such a committee, the report says:

"* * * it is the established public policy of all our states to prevent and punish unauthorized practice of law. That policy rests not upon the selfish interests of lawyers, but upon the proposition that in the field of law, just as in the field of medicine, the public is entitled to protection. It is entitled to skillful, competent and disinterested advice from persons of character, qualified by prescribed courses of study, and who, by reason of their office, are devoted disinterestedly to the per-

son receiving their legal services. No employee of a corporation or layman pursuing a private business objective of its, or his own, can possibly qualify to give such disinterested advice, however expert he may represent himself to be in any specialized field.''

We set out the foregoing as showing the necessity on the part of the bar and the public for protection from the commercialized activities of unqualified persons.

It seems to us clear that the actions of the respondent come within the restrictions placed by law upon such unauthorized practice. It follows, therefore, that the writ of certiorari should be sustained and the cause remanded for further proceedings in accordance with this opinion.—Writ sustained.

WENNERSTRUM, C. J., and GARFIELD, MILLER, BLISS, and STIGER, JJ., concur.