ALMA S. READ, Appellee, v. A. G. (A. C.) SCHULMEISTER, Treasurer, et al., Appellants.

No. 45275.

DECEMBER 10, 1940.

Carl V. Burbridge and Roy E. Havens, for appellants.

Paul E. Roadifer, for appellee.

HAMILTON, J.—This is an action in equity by virtue of which plaintiff sought by mandatory injunction to wipe out, as void, an attempted assessment of real estate and a tax sale based on said assessment and to prevent the execution of a tax deed and to quiet title to said property against all these efforts of the county to collect from plaintiff ordinary taxes upon real estate owned by her and upon which she confessedly paid no taxes for the years in question. Neither does she offer to pay such taxes now.

The trial court not only held the sale void and enjoined the execution of a tax deed but also held the assessment void and ordered a writ of injunction to issue commanding the treasurer to cancel the record of the assessment and, in addition, quieted plaintiff's title against any claims of the county by virtue of such assessment and tax sale. The sale was in gross of separate tracts of real estate entirely separated and used as separate and distinct properties and business enterprises in the hands of different tenants and the court rightfully held the sale to be void and there is no complaint in the court so holding. Appellants do, however, contend that the court went too far, under the record, in holding the assessment void. We are inclined to agree with the appellants.

The property owned by plaintiff and against which assessment was made consisted of two business properties in the town of Logan, Harrison county, Iowa. One is used as a picture show and is occupied by a tenant and this property is correctly described as Lot H in Block 21. Separated by an alley and four business buildings, not owned by plaintiff, is the other property occupied by another tenant as a mercantile establishment, its correct de-

scription being W 3 feet, 7 inches of Lot C and the E 20 feet, 5 inches of Lot D, Block 21.

The case was tried on an agreed statement of facts under the provisions of chapter 547, 1939 Code of Iowa. This agreed statement of facts, by reference, makes the assessment rolls and tax lists a part thereof and these have been certified to this court and are before us for inspection and consideration. The case seems to have been tried in the court below in a very summary manner. The petition was filed July 24, 1939, and decree entered the same day. The answer admits that the defendant Schulmeister is the duly elected, qualified and acting treasurer of Harrison county, Iowa, and that plaintiff is the owner of the real estate described in the petition and as to all other allegations alleges that the defendants have neither knowledge, information nor belief as to the facts alleged, therefore, deny the same and demand strict proof. The evidence consists of nothing more than the agreed statement of facts which is very brief and, to say the least, furnishes slight support for the trial court's findings insofar as the legality of the assessment is concerned, but, when considered in connection with the assessment rolls and tax lists, the record is sufficiently clear to present this one issue as to the validity of the assessment.

The trouble grows out of failure of the auditor, in making up the tax lists, to apply the tax rate to each separate valuation of each separate tract of real estate instead of applying the rate to the total or aggregate valuation of the separate tracts. Under the law, this does not render the assessment void, if, from the description of the properties and the separate valuations placed thereon, the amount of the tax of each separate tract could be ascertained by applying the tax rate thereto so as to enable the taxpayer to pay the taxes upon each such separate tract or to redeem the same in event of a tax sale. Such was our holding in Jones v. Mills County, 224 Iowa 1375, 279 N. W. 96. That there are some irregularities and some vagueness in description and slight inaccuracies of description in the record must be admitted, but these are not such as to render the assessment entirely void.

We start with the assessment roll for 1931. The name of the owner at that time is given as "Read & Frazier" and under the

heading "Real Estate" appears the assessment in substantially the following form:

REAL ESTATE

| Part of Section or Name of Town | Section or Lot | Township or Block | Actual Value Lots |
|---|---|---|---|
| W 3' 7" of C & E | | 21 | |
| 20' 5" of D | | 21 | 2752 |
| Lot | H | 21 | 3000 |
| Lots 7 & 8 | | 12 | 800 |
| Dwelling | | | 560 |
| TOTAL | | | 7112 |

The statutory law in force at the time this assessment was made is found in section 7109, Code of 1931, which provides:

"All property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and, except as otherwise provided, shall be assessed at twenty-five per cent of such actual value.

"Such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made. * * *"

Section 7111 provides for the assessor informing the person assessed in writing of the valuation put upon his property, etc. Presumably, the assessor did his duty and complied with said section. The record shows nothing to the contrary.

Section 7145 of said Code provides that the county auditor, before the first day of January in each year, shall transcribe the assessments into a book to be known as the tax list.

Section 7146 authorizes the auditor to correct all transfers up to date and place the legal description of all real estate in the name of the owner at said date as shown by the transfer books in his office.

Section 7147 provides for delivery of the tax list to the county treasurer on or before the thirty-first day of December and contains this specific provision:

"No informality therein, * * * shall affect the validity of any taxes, * * *."

Section 7149 provides:

"The auditor may correct any error in the assessment or tax list, and may assess and list for taxation any omitted property."

In construing this last above-mentioned section, this court has laid down the rule that this power of the auditor to correct the tax list continues until the tax has been paid or otherwise legally discharged. First National Bank v. Anderson, 196 Iowa 587, 192 N. W. 6.

Section 7159 provides:

"In all cases where real estate subject to taxation has not been assessed, the owner, by himself or agent, shall have the same done by the treasurer, and pay the taxes thereon; and if he fails to do so the treasurer shall assess the same and collect the tax assessed as he does other taxes."

Section 7160 provides:

"No failure of the owner to have such property assessed or to have the errors in the assessment corrected, and no irregularity, error or omission in the assessment of such property, shall affect in any manner the legality of the taxes levied thereon, * * *."

Going back now to the assessment roll, as we interpret it, and as we think it should be fairly interpreted, there is a separate valuation placed upon each of the separate properties now owned by plaintiff and, by applying the statutory law to ascertain the taxable value, which was 25 percent of the actual value, and then applying the rate of tax thereto, the amount of taxes due on each separate property would be easily ascertainable. This is all a matter of calculation. When we turn to the tax list, which the county auditor made up from this assessment roll, we find the listing substantially as follows:

| Name of Owners | Section | Lot | Block | Value | Total Value |
|---|---|---|---|---|---|
| Reed, Jas. W. & | W 4′ 7″ | C | 21 | | |
| A. R. Frazier | E 20′ 5″ | D | 21 | 688 | |
| | | H | 21 | 750 | |
| | 7 & 8 | | 12 | 340 | 1778 |

It will be noticed that these values on the tax list are exactly 25 percent of the actual values contained on the assessment roll. The auditor applied the rate to this total and carried out, in the proper place, the tax amounts for the first and second half of the consolidated taxes. It will also be noticed that, in transcribing, he made a mistake of one foot in the first description. The assessment roll gives it as W 3′ 7″, whereas the auditor gives it as W 4′ 7″. The tax list for the following year, 1932, contains the same identical descriptions and valuations.

Another assessment was made in 1933, this time in the name of the plaintiff, who had evidently purchased this property from the former owners although the record does not so show. The 1933 assessment roll follows the same general plan. Lot H in Block 21 is given an actual value of $2,700, and the other property is described in the following manner:

| 3′ 7″ of C and all E and 20′ 5″ of D | Block 21 | Actual Value 2400 |
|---|---|---|

There are some other lots assessed in this same roll to the plaintiff, each item of which is given a separate actual value and then the entire actual value of all of the separate valuations is recorded as $10,520. In preparing his tax list for 1933 from this assessment roll, the auditor corrected the description of plaintiff's property to read:

| | Lot H | Block 21 | Value 2700 |
|---|---|---|---|
| 3′ 7″ of C 20′ 5″ of D | | Block 21 | Value 2400 |

And, again, the auditor fixed the levy or tax rate upon the total of these and other items, instead of upon each valuation separately, and carried out the total tax accordingly.

. It will be noticed in this last tax list that the taxable value and the actual value are the same, the law having been changed in March 1933. (Chapter 121, section 75, Acts of the Forty-fifth General Assembly.) The same description with the same valuations appear on the tax list of 1934, which, of course, is based on the same assessment roll as the tax list of 1933.

■■ Under our statutes, the legislature has imposed upon every property owner the duty, first, to assist the assessor in properly listing all of his property for taxation (sections 6956, 7106 and 7107, Code of 1931), and, second, if the assessor fails to get the property entered on his assessment roll before turning it in, it is the owner's duty to go to the auditor or county treasurer and have his property entered on the proper records and have the same assessed and pay the taxes thereon. (Section 7159, Code of 1931.) If there are any discrepancies and errors in descriptions, the law provides a way for correcting the same at any time before the tax is paid. Plaintiff has done nothing. True, she did not own the property when the first assessment roll was made, but she took it subject to the tax against the property at the time she purchased it. She does not now claim that there is any inequality, or that the tax is unjust or that the valuations are excessive. She claims there never has been a valid assessment, and, hence, there are no taxes due; yet, she wants the cloud removed from her title by reason of this so-called invalid assessment. She comes into a court of equity for this purpose without making any tender or offer to pay taxes in any amount. This she may not do in a court of equity. Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323; Jones v. Mills County, supra; 61 C. J., section 1423; Conway v. Younkin, 28 Iowa 295. The trial court was in error in ordering the assessment cancelled.

Insofar as the assessment is concerned, the irregularities are such as might be easily corrected and, by separately calculating the tax on each separate valuation of the plaintiff's two properties, which, under the law, the county auditor is bound to do upon request, and, by paying the taxes, interest and penalty thereon, the plaintiff can free herself from any cloud upon her

particular property, because of this assessment of which she complains, and, at the same time, perform her duty of contributing her just proportion of the cost of running the government which she is duty-bound to do, but, until she offers to do so, she may not appeal to a court of equity for relief because of mere irregularities.

The decree of the trial court, in holding the assessment void and ordering the same cancelled of record and quieting plaintiff's title as against said assessment, is reversed. In all other respects, the decree is affirmed.

 Appellee has filed a motion to dismiss the appeal, contending that the question involved is now moot. In the decree of the trial court, the appellant was commanded by the court to make an entry on the tax list "Cancelled by decree of the District Court." In obedience to this command, appellant made such entry on the tax list and it is the contention of appellee that this constitutes a performance of the decree and, having so performed the order and decree, there is nothing from which to appeal. However, had the appellant failed to obey the court's writ, which was duly issued and served upon him, he would have subjected himself to punishment as for contempt. This being true, it can hardly be said that the appellant voluntarily performed the judgment of the trial court. Under the circumstances, the question is not moot and the motion should be and is overruled. Under our holding, the appellant is entitled to have the entry of cancellation, which was entered on the tax list in obedience to the trial court's decree, expunged and a decree entered in conformity with this opinion.—Reversed in part, affirmed in part, and remanded.

RICHARDS, C. J., and HALE, SAGER, MILLER, BLISS, OLIVER, and STIGER, JJ., concur.