Gene L. NEEDLES, Commissioner of Public Safety of the State of Iowa, Department of Public Safety, State of Iowa, John Mahnke and Drivers License Division, Appellants,

v.

Ed J. KELLEY, Judge, Appellee.

No. 52744.

Supreme Court of Iowa.

Feb. 6, 1968.

Richard C. Turner, Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellants.

William D. Guthrie, Webster City, for appellee.

BECKER, Justice.

On August 31, 1966 the Commissioner of Public Safety suspended the driver's license of Wayne Francis Kern effective September 30, 1966. Mr. Kern appealed. After trial on appeal defendant Ed J. Kelley, Judge of the Hamilton County District Court, vacated the suspension. Upon proper application writ of certiorari issued from this court ordering defendant judge to make return thereto. The pleadings, exhibits and decision of the district court were duly filed here. Petitioner alleges the trial

court's action in vacating suspension of the driver's license was illegal and void. We are asked to annul trial court's order. Under the evidence and the applicable law we hold the writ should be quashed.

The trial court does not formally appear here. The real controversy is between the department of public safety and Mr. Kern, hereafter referred to as defendant, who was involved in a fatal accident on a paved county road about 7:00 P.M. July 31, 1966. The department records contained a hearing officer's report although both parties agree no hearing was actually held. This report contained information that patrolman Sturges advised the subject was very cooperative, the accident was uncalled for had subject been taking his time instead of being in a hurry, they (apparently the participants) were lucky not to have more than one person killed and the sheriff felt the accident was a result of negligence. The hearing officer concluded the violation was serious and recommended suspension of license.

The records include certificates showing two previous convictions for speeding: sixty-five miles per hour in a fifty mile zone in Albert Lea, Minnesota, in February 1962 and seventy-seven miles per hour in a seventy mile zone in September 1963. The record also showed an August 17, 1966 conviction for improper passing. This charge involved the July 31st violation for which the license was suspended.

These documents, together with copies of notice of suspension, and notice that suspension was lifted pending appeal, constituted the essential part of the department's transcript.

Defendant perfected his appeal in form of a petition filed in the district court stating he appealed the action of the department. The commissioner filed answer and transcript of the records upon which the suspension was predicated.

The transcript was the only evidence produced by the department. Mr. Kern's evidence consisted of his own testimony concerning the accident. He told of proceeding with his three children as passengers along White Fox Road at about sixty miles per hour. He overtook a car going in the same direction at about the same speed. There was a yellow line prohibiting passing. He was beyond this yellow line before he attempted to pass. There was a dip in the road ahead. A car was down in that dip. Mr. Kern did not see it. He said, "I would like to think I did [look]. I know that I looked ahead through the—how you can look through another car that is in front of you, you can look right through, I thought I did." As he got into the left hand side of the road, Kern looked ahead but did not see the oncoming car until he was alongside the car he was passing. He tried to get on by but failed. He sideswiped the oncoming car (later identified as the Schwandt car) as he turned back to the right.

The driver testified the Schwandt car was six to seven hundred feet ahead when he first saw it. At the point of passing the road was 20 feet wide with no shoulders. Defendant did not think he could have slowed down and dropped back behind the car ahead and he could not take the shoulder.

The Schwandt car had six people in it. A 19 month old baby was thrown clear of that car and died as a result of injuries.

Defendant's appeal petition charged the commissioner acted illegally because there was no hearing on the suspension, the suspension was ex parte and arbitrary, a "serious violation" did not in fact occur, and the effective date was not set by an authorized person. In a brief order the court sustained plaintiff's position on all four grounds and vacated the suspension.

I. This application for writ of certiorari, directed against the district court of Hamilton County, alleges defendant judge acted illegally. We determine the scope of the trial court's function before passing on the

validity of its acts. The pertinent statutes are Code, 1966, section 321.210: "Authority to suspend; point system. The department is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee: * * *

"7. Has committed a serious violation of the motor vehicle laws of this state."

Section 321.211 provides for procedures for hearing by the department: "Notice and hearing. Upon suspending the license of any person as hereinbefore authorized the department shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing before the commissioner or his duly authorized agent as early as practical within not to exceed twenty days after receipt of such request in the county wherein the licensee resides unless the department and the licensee agree that such hearing may be held in some other county. Upon such hearing the commissioner or his duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the procedures of relevant books and papers and may require a re-examination of the licensee. Upon such hearing the department shall either rescind its order of suspension or, good cause appearing therefor, may extend the suspension of such license or revoke such license."

Section 321.215 provides: "Appeal. Any person denied a license or whose license has been canceled, suspended, or revoked by the department except where such cancellation or revocation is mandatory under the provisions of this chapter shall have the right to file a petition within thirty days thereafter for a hearing in the matter in a court of record in the county wherein such person shall reside and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon thirty days written notice to the commissioner, and thereupon the court shall hear and determine the matter as an orig-inal proceeding upon a transcript of all the proceedings before the commissioner, and upon additional evidence and other pleadings as the court may require. The decision of the court shall be final."

Danner v. Hass, 257 Iowa 654, 134 N.W. 2d 534, determined the constitutionality of the statutes in question. We recognized the appeal to the district court is to be tried as an original proceeding. The aggrieved party is given an opportunity to try his case fully, except that the administrative record, (at least in the absence of objection as to hearsay or other proper objection) is admissible in evidence before the district court. See Richard v. Holliday, Iowa, 153 N.W.2d 473.

In Danner v. Hass, supra, we also said: "We do not imply that the court may overrule the factual determinations of the administrative officer or board. In the original proceeding provided for by the statute, the court's function is to determine the legality of the administrative proceedings, and whether there is substantial material and competent evidence to support the findings of fact therein made. It may not substitute its judgment on the facts for that of the administrative body." The commissioner relies strongly on this dictum and argues: " * * * the court erred in substituting its own judgment to overrule the factual determination of the Department of Public Safety as to whether there was a 'serious violation'. This was illegal. The only question to be decided by the Court is whether there is 'substantial, material and competent evidence' before the Department which would support its findings of fact as to a 'serious violation'."

The driver's position is: "We urge seriously that if this *dictum* is the law, then the legislative provision of Section 321.215 has been rendered meaningless. This rule would restrict the 'appeal' to the function of certiorari. This rule would render meaningless the provision that additional evidence could be heard by the court and that the appeal should be heard as an 'original

proceeding', and that the 'decision of the court shall be final.' Further, such rule would effectively prevent the accused under Section 210 from any more review than is available under Section 209."

Our most recent opinion on the nature of appeal from department action to the district court under section 321.210 is Richard v. Holliday, Iowa, 153 N.W.2d 473. In that unanimous opinion we also said: "The essential issues raised by the petition filed under section 321.215, supra, and heard by defendant were whether the order of suspension was arbitrary and without sufficient foundation and the claimed unconstitutionality of section 321.210, subd. 7, asserted basis for the order." This was said in connection with consideration of the transcript of proceedings before the department. The nature of the appeal was not raised nor was it considered. Our designation of the essential issues was understandable in view of what had been asserted in Danner v. Hass. In view of the failure to reargue we did not reexamine the point. Defendant driver's argument here requires reexamination.

This problem has confronted many courts. The statutory language varies from state to state but substantially all of the statutes provide for appeal to the trial court and the court may take additional testimony. A majority of courts that have passed on the matter hold statutes substantially similar to ours require a complete trial *de novo* in the hearing court and not merely a review of the action of the administrative body. Conaway v. Thompson (N.D., 1956) 78 N.W.2d 400; Stehle v. State Department of Motor Vehicles, 229 Or. 543, 368 P.2d 386, 97 A.L.R.2d 1359; 97 A.L.R.2d 1368; 46 Iowa Law Review 862, 867.

When the court determines "the matter as an original proceeding" it determines it anew and is not bound by the action of the commissioner. It does not substitute its judgment for that of the commissioner. Initially the decision is in the administrative body acting both as prosecutor and judge but if appealed the authority rests in the district court. If the court is restricted to determination of the legality of the department's action its function as a reviewing court determining the matter as an original proceeding is lost.

The legislature put the ultimate decision making authority in the court. It must remain there. The court makes a new independent judicial determination on the evidence and the law. So much of Danner v. Hass and Richard v. Holliday as are inconsistent with this division are no longer to be deemed controlling.

II. Section 321.215 provides no appeal from the trial court to this court. Its final sentence reads, "The decision of the court shall be final." The only court referred to in the section is the court of record of the county of driver's residence. We therefore act only by application for writ of certiorari.

The rules covering us in certiorari are clearly set out in Lineberger v. Bagley, 231 Iowa 937, 940, 941, 2 N.W.2d 305, 307: "This court held in the early case of Tiedt v. Carstensen, 61 Iowa 334, 16 N.W. 214, which has been repeatedly followed, that where the law clothes an inferior tribunal with authority to decide upon facts submitted to it, its decision is not illegal, whatever it may be, if the subject matter and the parties are within its jurisdiction, and there is evidence to support the finding. The scope of certiorari under our statutes and at common law is very similar. 10 Am.Jur. 524, sec. 3, p. 527 et seq., sec. 5.

"We have recognized that where there is no evidence to support the finding under review, a question of law is presented and the writ will lie. City of Des Moines v. Board, etc., 227 Iowa 66, 69, 70, 287 N.W. 288. Accordingly, while it is not permissible to review disputed questions of fact, yet the court will inquire whether there is any competent evidence in support of the finding. Luke v. Civil Service Com., 225 Iowa 189, 194, 279 N.W. 443. If there is substantial evidence

to support the order under review, the court will not interfere. Home Sav. & Trust Co. v. District Court, 121 Iowa 1, 11, 95 N.W. 522. It is not sufficient to justify relief in certiorari that the conclusion reached by the lower tribunal 'may have been ever so erroneous,' if within its jurisdiction and not otherwise illegal. Adams v. Smith, 216 Iowa 1365, 1369, 250 N.W. 466, 468. Relief by certiorari has been denied where the showing in support of the order under review was 'weak and inconclusive.' Riley v. Crawford, 181 Iowa 1219, 1223, 165 N.W. 345."

■ III. The trial court was clearly clothed with jurisdiction. It did not act illegally unless we can say there is no evidence to support the finding under review. The court held a serious violation did not in fact occur and vacated the order suspending defendant's driver's license.

The facts before the court indicated a fatal accident happened during daylight hours while appellant driver was in the act of passing another vehicle. There was a dip in the road ahead. There was no yellow line prohibiting passing. There was no showing that vision was obscured so that the driver could not see a sufficient distance ahead. The 700 foot rule was not shown to have been violated. The oncoming car was first seen about 600 to 700 feet ahead while the defendant's car was opposite the car it was passing, the driver attempted unsuccessfully to complete the pass. The speed limit at the time and place was not shown to have been exceeded. The speed of the oncoming car is not shown. The collision occurred and plaintiff pled guilty. The question is not whether defendant was guilty of a violation but whether it was such a serious violation as to result in suspension of driver's privileges. The department held it was. The district court which by statute has the last word held it was not.

IV. The department argues, "He crossed the center line of the highway and at a place where he could not clearly view the road ahead. If a driver cannot see the highway ahead, he is required to stay in line."

■ No such requirement is found in the Iowa law. "No passing zones" and yellow center lines indicate visibility is restricted. Drivers normally have a right to presume absence of "no passing zones" or yellow lines on a marked highway normally means visibility is sufficient for passing even though the driver cannot actually see the roadbed itself. We are not aware of a rule that the roadbed itself must be visible. The driver must always pass with caution but this does not mean he must always wait until he can see the concrete slab.

■ In a very real sense every moving traffic violation is a serious violation. But every moving traffic violation does not result in a suspension of driver's license. The question of whether a moving traffic violation is "serious" in the sense used in section 321.210 is a judicial question to be determined under all of the facts in each case. The court determined a serious violation within the meaning of the statute did not occur. The evidence to the contrary was not so clear as to justify a finding by this court that the ruling was arbitrary or capricious.

■ V. The department also argues: "How could his violation be more serious, when it resulted in the death of a 19 month old child and injuries to the other occupants of the oncoming car, which was being driven on its own side of the road." The seriousness of the violation cannot be judged alone by the seriousness of the results. A violation may be serious although it causes no damage. Danner v. Hass, supra. Conversely a serious accident with tragic results may occur without a serious violation. We have no rule that every fatal accident accompanied by violation of a law of the road will automatically result in a suspension of the violator's license. Absent such legislative policy the trial court must consider the entire event as presented to it. This the court has done. Whether we agree or disagree, we are not to substitute our judgment for that of the trial court. To hold otherwise is to assume appellate jurisdiction not provided by statute.

■ VI. Defendant claims the department's action notifying him of license suspension prior to hearing was ex parte and arbitrary. The statute contemplates a judgment in the first instance by the department. This judgment is followed by peremptory action suspending the license. But this action is not arbitrary where the driver has a right to ask for a hearing or to appeal for judicial determination anew before the license must actually be surrendered.[1] This was the method chosen by the legislature to protect the individual's rights. It comports with due process.

The matter of the effective date of the suspension is not seriously argued by defendant. It would appear that the effective date was properly set.

■ VII. Defendant argues the department's application for writ of certiorari should be dismissed because the question of validity of suspension of driver's license effective September 30, 1966 is moot; the time for suspension being past.

In Berleen v. Iowa Department of Public Safety, Iowa, 150 N.W.2d 593, we note that where the revocation was on mandatory grounds and the time had run we could make disposition by declaring the question moot. The situation is otherwise where, as here, the suspension is discretionary. Section 321.210(7) states in part "and an appeal under the provisions of section 321.215 shall operate to stay the suspension pending the determination by the district court." If the finding is adverse to the driver the suspension ordered by the court will take effect at a date provided in the court's order. This delay does not make the question moot. The issues remain alive and of importance to both the driver and the department.

■ Defendant's license has never actually been taken from him. A "lift notice" was issued by the department in compliance with the statute which automatically stays the suspension pending appeal. This compliance was not voluntary. It does not constitute a waiver of the department's rights. Read v. Schulmeister, 229 Iowa 844, 295 N. W. 169.

■ VIII. In Houlahan v. Brockmeier, 258 Iowa 1197, 141 N.W.2d 545, 549, we state: "We have repeatedly held a decision which is proper on any ground shown by the record will not be disturbed on appeal." As stated in 5 Am.Jur.2d, Appeal and Error, § 785, p. 227: "The judgment or order need not be sustained for the same reasons or for all the reasons relied upon by the trial court." Here we have concluded the court did not act arbitrarily in finding a serious accident in the statutory sense did not occur.

It is therefore our judgment that the writ of certiorari is quashed.

MOORE, STUART, MASON, and Le-GRAND, JJ., concur.

RAWLINGS, J., concurs specially.

SNELL, J., GARFIELD, C. J., and LARSON, J., dissent.

SNELL, Justice (dissenting).

I dissent.

I think the majority opinion is based on a proposition not involved in the case before us and results in abdication of our duty to review the legality of the trial court's rul-

1. When notice of suspension of license is given by the department the driver may appeal under section 321.215 or proceed by way of certiorari. Hitchcock v. Department of Public Safety, 250 Iowa 1016, 98 N.W.2d 1. In that case we specifically refused to decide the contention that before appealing under 321.-215 appellant must first exhaust his administrative remedies by requesting an administrative hearing. That question is not raised here.
Mangan v. Department of Public Safety, 258 Iowa 359, 138 N.W.2d 922 is a case involving revocation under 321.210. That case noted petitioners elected to proceed by certiorari and were held to the rules governing that form of action.

ing and overemphasis on what is required to establish a "serious violation."

Much of Division I of the majority opinion is directed at one paragraph in Danner v. Hass cited by the majority and quoted from page 668 of 257 Iowa, page 543 of 134 N.W.2d, as follows:

"We do not imply that the court may overrule the factual determinations of the administrative officer or board. In the original proceeding provided for by the statute, the court's function is to determine the legality of the administrative proceedings, and whether there is substantial material and competent evidence to support the findings of fact therein made. It may not substitute its judgment on the facts for that of the administrative body."

The quoted statements were dicta. They go too far and I have no objection to their disapproval as general principles of law.

An appeal to the district court from the commissioner's ruling is a special proceeding. Richard v. Holliday, Iowa, 153 N.W.2d 473, 477. It is heard as an original proceeding upon a transcript of all the proceedings before the commissioner and upon additional evidence and other pleadings as the court may require. Section 321.215, Code of Iowa. Under this statute and with authority to hear additional evidence the court might reach a conclusion different from that of the commissioner. It is in the nature of a de novo review by the district court wherein the court should give weight to the findings of the commissioner but is not bound thereby to the extent required by an appeal in a law action.

To the extent that dictum in Danner v. Hass indicates or holds to the contrary, I have no objection to disapproval.

That problem, however, has nothing whatsoever to do with the case before us. The instant case was heard de novo and determined on the record before the commissioner and oral testimony received in district court.

I think the record so made and the licensee's own testimony requires the sustaining of the writ of certiorari now before us.

Section 321.215 of the Code concludes with this sentence, "The decision of the court shall be final." This provision limits our review to certiorari and the legality of the trial court's ruling. We may not substitute our judgment on the facts for that of the trial court. This does not mean, however, that we must abdicate our duty to determine the existence of any facts to support the court's decision. I do not think the legislature ever intended or that we should so construe the statute as to grant the trial court omnipotence, infallibility or arbitrary power.

Certiorari will not lie for the purposes of reviewing facts that have support in the record. Bump v. District Court, 232 Iowa 623, 629, 630, 5 N.W.2d 914, 917. It will lie to determine the existence of facts to support the finding under review. We said:

"This is true of proceedings in certiorari in general, where there are questions of fact to be determined. The writ lies where an inferior tribunal, board, or officer, exercising judicial functions, exceeds its proper jurisdiction or otherwise acts illegally, and there is no plain, adequate or speedy remedy at law. Code of 1939, section 12456. But we have also recognized that where there is no evidence to support the finding under review, a question of law is presented and certiorari will lie.

"The evidence in this case is undisputed and we are of the opinion that it is our duty to review and determine the finding as a matter of law."

In State ex rel. Rankin v. Peisen, 233 Iowa 865, 868, 869, 10 N.W.2d 645, 647, we said:

" * * * certiorari lies to review a decision on fact questions where there is no competent evidence to support the finding and there is no other adequate remedy. In such event, the question becomes one of law."

In City of Sioux City v. Civil Service Commission, 247 Iowa 1254, 1258, 78 N.W. 2d 833, 835, we said:

"However, where there is no substantial evidence to support the findings upon which are based its conclusions of law, the inferior tribunal, in making its determination, acts illegally, within the meaning of R.C.P. 306. (Citations)"

See also Powers v. McCullough, 258 Iowa 738, 741, 140 N.W.2d 378.

In Hohl v. Board of Education, 250 Iowa 502, 508, 94 N.W.2d 787, 791, we said:

"Certiorari is the method of bringing the record of an inferior tribunal before the court for the purpose of ascertaining whether the inferior tribunal or body had jurisdiction and whether its proceedings were authorized. See 19 Iowa Law Review 467. Clearly it comes within the supervisory functions of the appellate courts and is necessary to keep all such bodies within their proper functions and to prevent them from acting in an illegal manner. It is an extraordinary remedy, and the courts may make it available to all persons who may show a substantial interest in the matter challenged."

Was there any support in the record for the trial court's ruling? I think not. If not, the ruling was illegal.

The commissioner of public safety, the department of public safety and the drivers license division are the petitioners in certiorari and the trial judge is the respondent. The person whose license is involved is the licensee.

For convenience, though not technically correct, the commissioner will be referred to as plaintiff and Wayne Francis Kern, the licensee, as defendant.

On July 31, 1966 Mr. Kern (the real defendant herein) was driving his car south on an improved but unnumbered highway. It was known as White Fox Road. He was traveling about 60 miles per hour and had been following another car. He attempted to pass and collided with an oncoming car. As a result of the collision a young child in the approaching car was killed.

Defendant was arrested by a highway patrolman and on August 17, 1966 defendant was convicted in justice court in Webster City of improper passing (section 321.303).

The record of this conviction was received by the Department of Public Safety on August 26, 1966. Although not the basis of suspension here the records in the Department of Public Safety show that defendant forfeited bail on a charge of speeding in Albert Lea, Minnesota, on February 9, 1962 and that on September 2, 1963 he was convicted of speeding in justice court in Hampton, Iowa.

On September 1, 1966 defendant was notified by certified mail from the Department of Public Safety that effective September 30, 1966 his privileges to operate a motor vehicle were suspended under the provisions of section 321.210, paragraph # 7, Code of Iowa (Serious Violation) until November 29, 1966.

Pursuant to the provisions of section 321.-215, Code of Iowa, defendant appealed to the district court. Issue was joined, trial was had and records and testimony were introduced. Under the provisions of section 321.210, Code of Iowa, suspension was stayed pending determination by the court. The suspension was terminated by "Lift Notice" dated September 30, 1966.

On the district court appeal Mr. Kern, referred to by us herein as defendant, was the plaintiff. The trial court made no detailed finding of fact but sustained the appeal on four grounds urged by defendant herein. They were:

1. That he has had no hearing on said suspension.

2. That the claimed suspension was ex parte and arbitrary.

3. That the claimed basis of the suspension "serious violation" as provided under

Code section 321.210(7) did not in fact occur.

4. That the claimed suspension order was not made in accordance with law for the reason that the effective date thereof was not set by the Department, nor any authorized person.

The following is from defendant's testimony in district court.

He was involved in a motor vehicle collision on July 31, 1966. It was still daylight and he was traveling about 60 miles an hour. There was traffic ahead of him. He attempted to pass a car:

"Q. At the time you attempted to pass was there any other traffic in sight? A. I didn't see the other car.

"Q. When you started to pass were there any other cars in sight? A. Not that I could see.

"Q. Is it a fact that south of this location there is a dip in the road? A. Yes.

"Q. As a matter of fact, was there a car that was down in that dip? A. Yes.

"Q. And at the time you pulled out to pass that car was not in sight? * * * A. I didn't see it.

"Q. Well, did you look ahead of you as you pulled out to pass? A. I would like to think I did. I know that I looked ahead through the—how you can look through another car that is in front of you, you can look right through, I thought I did.

"Q. When was it you first observed the other car? A. I suppose when I was about even with the car I was passing. * * *

"Q. Did you see any other vehicles approaching you at that time as you just pulled out? A. Not just as I pulled out, but it must have been shortly after because I seen the car after I got out. * * *

"Q. Well, you knew the condition of this White Fox Road, didn't you? You had been over it a number of times before. A. Yes.

"Q. You knew about this dip in the road? A. Yes."

The majority opinion does not try to support the legality of grounds numbered 1, 2 and 4 of the trial court's ruling. Brief mention as to illegality will suffice.

The trial court found that defendant "has had no hearing on said suspension." No such hearing is required.

Section 321.210 of the Code specifically authorizes suspension without preliminary hearing. Provisions for notice and hearing before the effective date of the suspension are in the statute and in section 321.211.

The trial court found "that the claimed suspension was ex parte and arbitrary" and "that the effective date thereof has not been set * * *." Division VI of the majority opinion disposes of these findings. The constitutionality of section 321.210 and suspension thereunder has been upheld. Danner v. Hass, supra, and Richard v. Holliday, supra.

The real thrust of the majority opinion is found at the end of Division VIII wherein it is concluded "the court did not act arbitrarily in finding a serious accident in the statutory sense did not occur." I think this conclusion is demonstrably wrong, contrary to the intent of the law and without support in logic or common experience.

The statute says "serious violation" not "serious accident."

The second paragraph of Division IV of the majority opinion says:

"Drivers normally have a right to presume absence of 'no passing zones' or yellow lines on a marked highway normally means visibility is sufficient for passing

even though the driver cannot actually see the roadbed itself. We are not aware of a rule that the roadbed itself must be visible. The driver must always pass with caution but this does not mean he must always wait until he can see the concrete slab."

Except for the reference to the concrete slab, I disagree. The statement is not in accord with section 321.303 of the Code. This section says:

"Limitations on overtaking on the left. No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

Intent to violate the law is not an element in proof of violation of the statute. Here the violation had been established. Defendant had been convicted of improper passing in violation of the statute.

I agree with the majority that "In a very real sense every moving traffic violation is a serious violation. But every moving traffic violation does not result in a suspension of driver's license." Of course that is true. Undoubtedly hundreds of traffic violations occur that are either unnoticed or overlooked. That does not mean that the violation here can be said to be other than serious.

I agree that the seriousness of a crime cannot in all cases be judged by the result but the result certainly cannot be ignored. To shoot at a person is a serious crime even though the aim is poor and the intended victim is unharmed. To burn a building may be arson but if someone is in the building and is burned to death the act is murder in the first degree and is punishable by life imprisonment. As said in Danner v. Hass, supra, 257 Iowa loc. cit. 665, 134 N.W.2d loc. cit. (a point to which the majority has indicated no disagreement), "a violation may be serious although it causes no damage; it is its potentiality for harm by which it must be measured."

One of the definitions of "serious" is "attended with danger." See Webster's New International Dictionary Third Edition.

Defendant argues that he did not in passing cross a yellow line; that the accident arose from an error of judgment rather than an intentional and calculating violation. He says "Although the *consequence* was serious, the violation was inadvertent and not intended.

Intent is not a necessary element in determining seriousness. An act may be serious even though inadvertent. In the case at bar defendant was familiar with the highway; he knew there was a dip in the road ahead; he attempted to pass on the left side of the road after merely looking through the windows of the car ahead; the road ahead was not clearly visible and free from oncoming traffic. He violated the law. A collision resulted and a child was killed.

The majority says that in a very real sense every moving traffic violation is a serious violation and then holds that the trial court did not act arbitrarily in finding that there was no serious violation here. I cannot reconcile these statements. It is hard to think of anything more serious than a violation of the law resulting in the death of a child.

I find nothing in the record to support the trial court's findings of fact. If without support it was illegal. I fear that the holding of the majority may lead to a

serious breakdown in the enforcement of our motor vehicle statutes.

I would sustain the writ.

GARFIELD, C. J., and LARSON, J., join in this dissent.

RAWLINGS, Justice (concurring specially).

Code section 321.210, gives department of public safety authority, " * * * to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee: * * *

"7. Has committed a serious violation of the motor vehicle laws of this state."

Upon issuance of a suspension order notice the alleged offender is granted permissive hearing before the commissioner or his agent. Section 321.211, Code, 1966.

Then Code section 321.215 permits an appeal, except where cancellation or revocation is mandatory. Incidentally, we are not here dealing with a chapter 321B proceeding.

If the licensee elects to appeal it shall be to a court of record in the county in which the person resides. In that regard section 321.215 provides, inter alia, " * * * the court shall hear *and determine* the matter as an original proceeding upon a transcript of all the proceedings before the commissioner, and upon additional evidence and other pleadings as the court may require. The decision of the court shall be final." (Emphasis supplied)

As to construction of this statutory provision, rule 344(f) (13), R.C.P., states: "In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said." In this connection the word "determine", as here used,

means to bring a question or controversy to a final conclusion. People v. Kuduk, 388 Ill. 248, 57 N.E.2d 755. More specifically, "to determine" is to decide, adjudge, adjudicate an issue presented, come to a decision, perform a judicial act, settle by judicial sentence. People v. Escobar, 122 Cal.App.2d 15, 264 P.2d 571, 573, and Wood v. Department of Public Safety, Tex.Civ. App., 311 S.W.2d 274, 276.

It thus appears the commissioner has full and complete primary authority to act, and a licensee is allowed permissive hearing, yet the district court, in appellate proceedings, may completely ignore the reasoning upon which the administrative officer acted, or his conclusion.

II. Although the foregoing may serve to create something of an incongruous situation, it appears to be unavoidable in light of the statutory language employed in Code section 321.215, supra.

In other words, appellate determination under that statute, as above construed, negates entirely the effectiveness of administrative action, and is contrary to accepted standards in administrative proceedings, leaving ultimate determination not only to district courts on appeal, but also this court on certiorari.

In effect, that construction serves to subvert normal administrative processes. As stated in 2 Am.Jur.2d, Administrative Law, section 612, pages 452–453: "The cases are legion which stress the fact that the function of the court, or judicial review of the action of administrative agencies, is limited in scope and the range of issues open to review is narrow, being limited to judicial questions, even though the statute provides for review on the law and the facts or a trial de novo, or for a suit to test the validity of rules, regulations, or orders. The scope of review is not the same as upon review by an appellate court of a judgment of a lower court. The boundaries of judicial review, however, are stated in vary-

ing standards which themselves are subject to variation in particular situations.

"Judicial review is ordinarily limited or confined to the record of the proceedings before the agency and to the consideration of questions of law or to questions of law and the sufficiency of the evidence, or to determining whether the action of the agency is legal or in accordance with the law or whether errors of law have been committed."

And Davis, Administrative Law Text, Hornbook Series, section 29.07, page 531, says: "When an administrative record has been made, taking testimony from the same witnesses a second time is wasteful, and even when statutes explicitly provide for de novo review, courts strive to prevent a duplication of the evidence-taking process. Although over the last few decades the movement away from use of juries on judicial review is perceptible, jury review is still common in some states. A test which is between the substantial-evidence test and substitution of judgment is the test of whether the finding is 'against the manifest weight of the evidence.'

"Scope of review in state courts varies not only from state to state but often from agency to agency within the same state. Although the scope of review of the multifarious state and local agencies remains exceedingly diverse, the federal system is providing an effective leadership which the states are increasingly following."

However, for reasons previously set forth, this appears to be a matter resting entirely in the hands of the legislature. See Kruck v. Needles, Iowa, 144 N.W.2d 296, 300; Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 529, 111 N.W.2d 317; and 50 Am.Jur., Statutes, section 380, page 391.

I find no alternative but to concur in the result reached by the majority.